Jon T. Neumann, SBN 018858
neumannj@gtlaw.com
GREENBERG TRAURIG, LLP
2375 E. Camelback Road, Suite 700
Phoenix, AZ 85016
(602) 445-8000

Peter J. Kocoras (*pro hac vice* application forthcoming)
Peter.Kocoras@ThompsonHine.com
THOMPSON HINE LLP
20 North Clark Street, Suite 3200
Chicago, Illinois 60602-5093
Telephone: (312) 998-4241
Fax: (312) 998-4245

Brian K. Steinwascher (*pro hac vice* application forthcoming)
Brian.Steinwascher@ThompsonHine.com
THOMPSON HINE LLP
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
Telephone: (212) 908-3916
Fax: (212) 344-6101

*Attorneys for Plaintiffs Caremark PHC, LLC; CaremarkPCS Health, LLC; Caremark, LLC; Caremark Rx, LLC; Aetna, Inc.; and Aetna Health, Inc.*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Caremark, LLC; Caremark PHC, LLC; CaremarkPCS Health, LLC; Caremark Rx, LLC; Aetna, Inc.; and Aetna Health, Inc., <br><br> Petitioners, <br><br> v. <br><br> The Choctaw Nation; the Choctaw Nation Health Services Authority; the Choctaw Health Care, Talihina, OK; the Choctaw Nation Health Clinic-Rubin White, Poteau; the Choctaw Nation Health Clinic-McAlester; the Choctaw Nation Health Clinic-Idabel; the Choctaw Nation Health Clinic-Stigler; the Choctaw Nation Health Clinic-Hugo; the Choctaw Nation Health Clinic-Atoka; the Choctaw Nation Heath Care Center Durant Pharmacy; and the Choctaw Nation Online Pharmacy Refill Center, <br><br> Respondents. | Case No. <br><br><br> **PETITION FOR ORDER TO COMPEL ARBITRATION** |

Petitioners Caremark, LLC, Caremark PHC, LLC, CaremarkPCS Health, LLC, Caremark Rx, LLC, Aetna, Inc. and Aetna Health, Inc. (collectively, "Petitioners"), hereby petition the Court to compel Respondents to submit their dispute to an arbitrator under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. (the "FAA"), and in accordance with certain governing agreements.  In support, Petitioners submit the following:

**INTRODUCTION**

1. Respondent the Choctaw Nation (the "Nation") owns and operates certain pharmacies, directly or through Respondent the Choctaw Nation Health Services Authority ("CNHSA"), which is, upon information and belief, a department, division, or agency of the Nation.  As relevant here, the Nation's pharmacies include (1) the Choctaw Nation Health Care, Talihina, Oklahoma; (2) the Choctaw Nation Health Clinic – Rubin White, Poteau, Poteau, Oklahoma; (3) the Choctaw Nation Health Clinic – McAlester, McAlester, Oklahoma; (4) the Choctaw Nation Health Clinic – Idabel, Idabel, Oklahoma; (5) the Choctaw Nation Health Clinic – Stigler, Stigler, Oklahoma; (6) the Choctaw Nation Health Clinic – Hugo, Hugo, Oklahoma; (7) the Choctaw Nation Health Clinic – Atoka, Atoka, Oklahoma; (8) the Choctaw Nation Health Center Durant Pharmacy, Durant, Oklahoma; and (9) the Choctaw Nation Online Pharmacy Refill Center (collectively with the Nation and CNHSA, "Respondents").

2. The Nation's pharmacies participate in multiple pharmacy networks operated by Petitioner Caremark, LLC ("Caremark").  Respondents entered into contracts with Caremark, referred to as a "Provider Agreement."

3. In the Provider Agreement, Respondents expressly agreed that all disputes

2

"in connection with, arising out of or relating in any way to" the Provider Agreement "will be exclusively settled by arbitration before an arbitrator in accordance with the rules of the American Arbitration Association." Respondents likewise agreed to hold any arbitration in Scottsdale, Arizona.

4. In the Provider Agreement, Respondents expressly agreed: "The arbitrator(s) shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of the agreement to arbitrate, including but not limited to, any claim that all or part of the agreement to arbitrate is void or voidable for any reason."

5. Respondents have ignored their obligation to submit their dispute to an arbitrator in Arizona in the first instance. Instead, the Nation has sued Petitioners in federal district court in Oklahoma, despite the fact that the Provider Agreement requires an arbitrator, and not a court, to decide questions of arbitrability of disputes between the parties, and despite the fact that claims in the dispute are in connection with, arise out of, and/or relate to the Provider Agreement.

6. The Nation has refused to proceed with arbitration, notwithstanding Petitioners' formal request to do so.

7. Having received the economic benefits of the Provider Agreement for years, Respondents cannot now repudiate their obligations under the same agreement.

8. Petitioners now respectfully petition the Court for an Order, pursuant to section 4 of the FAA, 9 U.S.C. § 4, to compel Respondents to submit the arbitrability of their dispute with Petitioners to an arbitrator in the first instance.

3

# BACKGROUND

9. Among other aspects of their business, Caremark offers pharmacy benefit management ("PBM") services to insurers, third-party administrators and employer sponsors of group health plans. The array of services of Caremark and their affiliates offer PBM clients includes the administration and maintenance of pharmacy provider networks. The pharmacy providers included in such networks agree by contract to fill prescriptions for participants in Caremark's plans at contractual prices.

10. Each of the Nation's pharmacies is an Indian Health Service/Tribal/Urban Indian Health Pharmacy ("ITU Pharmacy") operated by the Nation, which is an Indian tribe or tribal organization as defined under 25 U.S.C. § 1603.

11. Pursuant to the Provider Agreement, the Nation's pharmacies, through their ownership and operation by the Nation and the CNHSA, are participants in multiple pharmacy networks administered by Caremark.

# JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over the claims raised herein pursuant to 28 U.S.C. § 1331. The dispute underlying this Petition, i.e., the claims in the Complaint, defined and described *infra*, arises under the laws of the United States. Specifically, Petitioners seek to compel arbitration of the Nation's claims that Petitioners allegedly violated the Indian Health Care Improvement Act, 25 U.S.C. § 1621e.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. The FAA permits a party aggrieved by the failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration to petition a United States District Court for an

4

order directing that such arbitration proceed in the manner provided in such agreement. The Arbitration Provision requires any arbitration to take place in Scottsdale, Arizona, within this Court's jurisdiction.

# PARTIES

14. Petitioner Caremark, LLC is a California limited liability company with its headquarters at 2211 Sanders Road, Northbrook, Illinois 60062.

15. Petitioner Caremark PHC, LLC is a Delaware limited liability company with its headquarters at One CVS Drive, Woonsocket, Rhode Island 02895.

16. Petitioner CaremarkPCS Health, LLC is a Delaware limited liability company with its headquarters at 750 West John Carpenter Freeway, Irving, Texas 75039.  CaremarkPCS Health, LLC was formerly known as AdvancePCS Health, L.P. ("AdvancePCS").

17. Petitioner Caremark Rx, LLC is a Delaware limited liability company with its headquarters at One CVS Drive, Woonsocket, Rhode Island 02895.

18. Petitioner Aetna, Inc. is a Pennsylvania corporation with its headquarters at 151 Farmington Avenue, Hartford, Connecticut 06156.

19. Petitioner Aetna Health, Inc. is a Pennsylvania corporation with its headquarters at 1425 Union Meeting Road, Blue Bell, Pennsylvania 19422.

20. Respondent the Choctaw Nation is a federally recognized Native American tribal nation headquartered at 1802 Chukka Hina, Durant, Oklahoma 74701.  The Nation operates a healthcare system, upon information and belief directly or through Respondent CNHSA; the healthcare system includes the Respondent pharmacies, which provide

pharmacy services including dispensing prescription medications to members of the Nation.

21. Respondent CNHSA is, on information and belief, a division, department and/or an agency of the Nation.

22. Each of the Respondent pharmacies is owned and operated by the Nation and/or CNHSA:

(a) Respondent the Choctaw Nation Health Care Center, Talihina, Oklahoma, is an ITU Pharmacy operated by an Indian tribe or tribal organization as defined under 25 U.S.C. § 1603 (namely, the Nation and CNHSA), located at One Choctaw Way, Talihina, Oklahoma 74571.

(b) Respondent the Choctaw Nation Health Clinic – Rubin White, Poteau, Poteau, Oklahoma, is an ITU Pharmacy operated by an Indian tribe or tribal organization as defined under 25 U.S.C. § 1603 (namely, the Nation and CNHSA), located at 109 Kerr Avenue, Poteau, Oklahoma 74953.  This pharmacy has the same NCPDP number and the same business address as Respondent the Choctaw Nation Online Pharmacy Refill Center, which shows that they are the same pharmacy.

(c) Respondent the Choctaw Nation Health Clinic – McAlester, McAlester, Oklahoma, is an ITU Pharmacy operated by an Indian tribe or tribal organization as defined under 25 U.S.C. § 1603 (namely, the Nation and CNHSA), located at 1127 South George Nigh Expressway, McAlester, Oklahoma 74501.

(d) Respondent the Choctaw Nation Health Clinic – Idabel, Idabel,

Oklahoma, is an ITU Pharmacy operated by an Indian tribe or tribal organization as defined under 25 U.S.C. § 1603 (namely, the Nation and CNHSA), located at 902 East Lincoln, Idabel, Oklahoma 74745.

(e) Respondent the Choctaw Nation Health Clinic – Stigler, Stigler, Oklahoma, is an ITU Pharmacy operated by an Indian tribe or tribal organization as defined under 25 U.S.C. § 1603 (namely, the Nation and CNHSA), located at 2204 East Main, Stigler, Oklahoma 74462.

(f) Respondent the Choctaw Nation Health Clinic – Hugo, Hugo, Oklahoma, is an ITU Pharmacy operated by an Indian tribe or tribal organization as defined under 25 U.S.C. § 1603 (namely, the Nation and CNHSA), located at 410 North M Street, Hugo, Oklahoma 74743.

(g) Respondent the Choctaw Nation Health Clinic – Atoka, Atoka, Oklahoma, is an ITU Pharmacy operated by an Indian tribe or tribal organization as defined under 25 U.S.C. § 1603 (namely, the Nation and CNHSA), located at 1585 West Liberty Road, Atoka, Oklahoma 74525.

(h) Respondent the Choctaw Nation Health Center Durant Pharmacy, Durant, Oklahoma, is an ITU Pharmacy operated by an Indian tribe or tribal organization as defined under 25 U.S.C. § 1603 (namely, the Nation and CNHSA), located at 1801 Chukka Hina, Durant, Oklahoma 74701.

## STATEMENT OF FACTS

23. Each of the Nation's pharmacies has a current contract, known as a Provider Agreement, with Caremark and CaremarkPCS (collectively referred to *infra* as

"Caremark" unless otherwise indicated). Each Provider Agreement expressly incorporates the terms of a Provider Manual.

24. The following describes the manner in which each Pharmacy came to be bound by a current Provider Agreement:

    a. Respondent the Choctaw Nation Health Care Center, Talihina, Oklahoma signed a Provider Agreement with Caremark Inc. (now known as Caremark, LLC) and CaremarkPCS in August 2005.

    b. Respondent the Choctaw Nation Health Clinic – Rubin White, Poteau signed a Provider Agreement with Caremark Inc. (now known as Caremark, LLC) and CaremarkPCS in August 2005.

    c. Respondent the Choctaw Nation Health Clinic – McAlester signed a Provider Agreement with Caremark Inc. (now known as Caremark, LLC) and CaremarkPCS in August 2005.

    d. Respondent the Choctaw Nation Health Clinic – Idabel signed a Provider Agreement with Caremark Inc. (now known as Caremark, LLC) and CaremarkPCS in August 2005.

    e. Respondent the Choctaw Nation Health Clinic – Stigler signed a Provider Agreement with Caremark Inc. (now known as Caremark, LLC) and CaremarkPCS in August 2005.

    f. Respondent the Choctaw Nation Health Clinic – Hugo signed a Provider Agreement with Caremark Inc. (now known as Caremark, LLC) and CaremarkPCS in August 2005.

    g.  Respondent the Choctaw Nation Health Clinic – Atoka signed a Provider Agreement with Caremark Inc. (now known as Caremark, LLC) and CaremarkPCS in December 2008.

    h.  Additionally, in October 2009, the Choctaw Nation Health Care, Talihina, Oklahoma; the Choctaw Nation Health Clinic – Rubin White, Poteau; the Choctaw Nation Health Clinic – McAlester; the Choctaw Nation Health Clinic – Idabel; the Choctaw Nation Health Clinic – Stigler; the Choctaw Nation Health Clinic – Hugo; the Choctaw Nation Health Clinic – Atoka; and the Choctaw Nation Health Center Durant Pharmacy signed a single Provider Agreement with Caremark, LLC and CaremarkPCS. This 2010 provider agreement, referred to as a "chain agreement," replaced the Provider Agreements referenced in Paragraphs 24(a) through 24(g) above, with the exception of the Choctaw Nation Health Center Durant Pharmacy, which had not previously signed a Provider Agreement.

25.    All Provider Agreements signed by the Choctaw Nation pharmacies state that "This Agreement, the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the 'Provider Agreement' or 'Agreement.'"

9

26. Copies of the Provider Manual have been sent via UPS or FedEx to the Nation's pharmacies, including most recently in 2020, when each of the Nation's pharmacies received the new version of the Provider Manual.

27. The Provider Manual governs all aspects of a pharmacy's relationship with Caremark, including the process for submitting pharmacy claims, and thus any pharmacy participating in a Caremark network would necessarily need to review and understand the Provider Manual at the time it entered into a Provider Agreement, and each time it was updated, in order to submit claims to Caremark for reimbursement.

28. The 2020 Provider Manual is currently in effect, applicable to, and binding on any pharmacy that has a Provider Agreement with Caremark and participates in the Caremark network, including the Choctaw Nation pharmacies, and the Arbitration Provision in the 2020 Provider Manual applies to this dispute.

29. Since entering into the Provider Agreement, and after receipt of each version of the Provide Manual including the 2020 version, Respondents have submitted claims for reimbursement pursuant to those agreements' terms. The Nation has never disclaimed that its relationship with Caremark is governed by the Provider Agreement.

30. In particular, after receipt of the 2020 version of the Provider Manual, Respondents continued to submit pharmacy claims to Caremark for reimbursement. This means, pursuant to the terms of the Provider Manual, that Respondents agreed to and accepted the terms of the 2020 Provider Manual.

31. Each of the Choctaw Nation pharmacies has, on various dates, executed Network Enrollment Forms with Caremark, pursuant to which the Choctaw Nation pharmacy enrolled as a participant in specific networks administered by Caremark.

32. The Provider Agreement, Provider Manual, and Network Enrollment Forms memorialize the contractual relationship Respondents have with Caremark, including by establishing the amounts paid for pharmacy claims to Respondents and the networks in which they participate. The Provider Agreement and incorporated Provider Manual are referred to collectively as the "Provider Agreement" unless otherwise indicated.

33. The Provider Agreement, Provider Manual, and Network Enrollment Forms contains nonpublic information and proprietary business, technical and financial information that is highly confidential. The disclosure of these documents would negatively affect current and future business dealings and cause serious commercial injury to Petitioners.

34. The Provider Agreement provides that Arizona law governs the Provider Agreement.

35. As relevant here, the current Provider Manual, incorporated into the Provider Agreement, provides in relevant part with respect to arbitration (the "Arbitration Provision") (emphasis added):

> Any and all disputes between Provider and Caremark *[including Caremark's current, future, or former employees, parents, subsidiaries, affiliates, agents and assigns (collectively referred to in this Arbitration section as "Caremark")]*, including but not limited to, disputes in connection with, arising out of, or relating in any way to, the Provider Agreement *or to Provider's participation in one or more Caremark*

11

***networks or exclusion from any Caremark networks***, will be exclusively settled by arbitration. This arbitration provision applies to any dispute arising from events that occurred before, on or after the effective date of this Provider Manual. Any dispute otherwise arbitrable hereunder shall be deemed waived, and no such dispute shall be made or raised, unless a Dispute Notice has been given to Caremark, or arbitration filed, as provided below. Unless otherwise agreed to in writing by the parties, the arbitration shall be administered by the American Arbitration Association ("AAA") pursuant to the then applicable AAA Commercial Arbitration Rules and Mediation Procedures including the rule governing Emergency Measures of Protection (available from the AAA). In no event may the arbitrator(s) award indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business, except as required by Law.

***The arbitrator(s) shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of the agreement to arbitrate, including but not limited to, any claim that all or part of the agreement to arbitrate is void or voidable for any reason.*** In the event the arbitrator(s) determine that any provision of this agreement to arbitrate is invalid for any reason, such provision shall be stricken and all remaining provisions will remain in full force and effect. The arbitrator(s) must follow the rule of Law, and the award of the arbitrator(s) will be final and binding on the parties, and judgment upon such award may be entered in any court having jurisdiction thereof. Any such arbitration must be conducted in Scottsdale, Arizona and Provider agrees to such jurisdiction, unless otherwise agreed to by the parties in writing.

36. All prior Provider Manuals in effect since the Nation's pharmacies signed Provider Agreements also contained a provision labeled "Arbitration."

37. On April 21, 2021, the Nation sued Petitioners and other defendants in the United States District Court for the Eastern District of Oklahoma, styled *The Choctaw Nation v. CVS Caremark, LLC, et al.*, Case No. 6:21-cv-00128-PRW (the "Complaint"), alleging that the defendants have failed to pay the Nation's claims for prescription drugs submitted by their pharmacies in violation of 25 U.S.C. § 1621e (the "Recovery Act"). A copy of the Complaint is annexed as Exhibit 1 to this Petition.

38. Under the Arbitration Provision, the Nation is required to submit its dispute to an arbitrator in the first instance to resolve all questions related to arbitrability.

39. Specifically, as noted above, the Arbitration Provision contains a delegation clause that provides: "The arbitrator(s) shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of the agreement to arbitrate, including but not limited to, any claim that all or part of the agreement to arbitrate is void or voidable for any reason."

40. Thus, any challenge the Nation brings to whether the Arbitration Provision governs its dispute with Petitioners as alleged in the Complaint must be resolved by the arbitrator and not a court.

41. In any event, the Nation's dispute in the Complaint under the Recovery Act is arbitrable because it is within the scope of the Arbitration Provision, as that provision applies to all disputes, "in connection with, arising out of, or relating in any way to, the Provider Agreement or to Provider's participation in one or more Caremark networks."

42. Notwithstanding the clear terms of the Provider Agreement, the Nation brought its claims against Petitioners in federal district court.

43. By letters dated July 8, 2021, Petitioners demanded that the Nation and all Respondents must arbitrate the dispute raised in the Complaint in Scottsdale, Arizona, pursuant to the terms of the Provider Agreement and Arbitration Provision. Copies of these letters are annexed as Exhibit 2.

44. The Nation, however, refused to honor Petitioners' election of arbitration. On July 14, 2021, the Nation notified counsel for Petitioners by letter that it would not

consent to arbitration of its dispute with Petitioners.  A copy of this letter is annexed as Exhibit 3.

45. Petitioners are therefore filing this action, through the instant Petition, supporting Declaration of Stephanie Harris with accompanying exhibits, and the supporting Memorandum of Law, to enforce the Arbitration Provision in the Provider Agreement, and specifically the delegation clause therein, and to prevent Respondents from taking any action contrary to the Arbitration Provision.

46. Petitioners are also separately seeking a stay of all proceedings involving the Complaint in the District Court for the Eastern District of Oklahoma, by application before that court.

## CLAIM FOR RELIEF

### COUNT I:  ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT

47. Petitioners incorporate by reference Paragraphs 1 through 46, above.

48. The FAA applies to the Provider Agreement as a matter of law and as expressly provided in the Provider Agreement.

49. Section 4 of the FAA, 9 U.S.C. § 4, provides Petitioners a cause of action to compel Respondents to resolve the dispute with Petitioners through arbitration. Section 4 of the FAA, 9 U.S.C. § 4, provides in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the

parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

50. Petitioners are parties aggrieved by Respondents' refusal to arbitrate under a written agreement for arbitration and, save for the arbitration agreement, the Court has jurisdiction under Title 28 of the U.S. Code, Section 1331.

51. The Arbitration Provision in the Provider Agreement constitutes a written agreement that is valid and enforceable under the FAA. Section 2 of the FAA, 9 U.S.C. § 2, provides in relevant part:

> A … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

52. The Arbitration Provision is a written provision in a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising under the Provider Agreement.

53. The Arbitration Provision is valid, irrevocable, and enforceable.

54. The Arbitration Provision contains a valid and enforceable delegation clause that provides: "The arbitrator(s) shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of the agreement to arbitrate, including but not limited to, any claim that all or part of the agreement to arbitrate is void or voidable for any reason."

55. Pursuant to the delegation clause, the arbitrator and not a court must determine in the first instance whether Respondents' dispute is subject to the Arbitration

Provision.

56. Likewise, pursuant to the delegation clause, the arbitrator and not a court must resolve any defenses to arbitration asserted by the Nation, including but not limited to defenses based on sovereign immunity and any argument that the Recovery Act displaces an arbitration agreement.

57. Nevertheless, Respondents have disregarded their contractual obligation to submit the arbitrability of the claims asserted in the Complaint to an arbitrator in the first instance.

58. The Arbitration Provision also applies to all claims asserted by the Nation in the Complaint.

59. Thus, the Arbitration Provision contractually requires Respondents to submit all disputes, "including but not limited to, disputes in connection with, arising out of, or relating in any way to, the Provider Agreement or to Provider's participation in one or more Caremark networks" to be "exclusively settled by arbitration" in Scottsdale, Arizona under American Arbitration Association rules.

60. The claims set out in the Complaint are "in connection with, arising out of, or relat[e] . . . to, the Provider Agreement or to Provider's participation in one or more Caremark networks" and therefore fall within the scope of the Arbitration Provision.

61. Nevertheless, Respondents have disregarded their contractual obligation to submit the arbitrability of the claims asserted in the Complaint to an arbitrator.

62. The Court should enter an Order compelling Respondents to submit the question of arbitrability of all claims raised in the Complaint, including any defenses to

arbitration asserted by Respondents, to the arbitrator in the first instance.

63. All Petitioners are entitled to enforce the Arbitration Provision, including the delegation clause contained therein, under its terms, as well as under applicable law, even if they may not be signatories to any specific agreement. Furthermore, because the Nation must rely on the terms of the Provider Agreement in asserting its claims against all Petitioners in the Complaint, and because the Nation alleges in the Complaint interdependent and concerted misconduct among all Petitioners, principles of equity and law require that the Nation's claims against all Petitioners be arbitrated.

64. Respondents cannot avoid arbitration by invoking sovereign immunity because such a defense is inapplicable under the circumstances present here, and any such defense must be resolved in the first instance by the arbitrator pursuant to the delegation clause. In any event, Respondents waived any such immunity with respect to the dispute in the Complaint when it entered into the Provider Agreement and accepted and became bound by the Arbitration Provision in the Provider Manual.

WHEREFORE, Petitioners request that the Court order the following relief:

1. An Order, pursuant to Section 4 of the FAA, 9 U.S.C. § 4, compelling Respondents to submit the dispute with the Petitioners relating to the claims in the Complaint to the arbitrator to resolve all questions of arbitrability in the first instance; and

2. any further relief the Court deems necessary.

/ / /

/ / /

Dated this 10th day of September, 2021

Respectfully submitted,

**GREENBURG TRAURIG, LLP**

/s/ Jon T. Neumann
Jon T. Neumann
2375 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
(602) 445-8411
neumannj@gtlaw.com

THOMPSON HINE LLP
Peter J. Kocoras
(*pro hac vice* application forthcoming)
20 North Clark Street, Suite 3200
Chicago, Illinois 60602-5093
(312) 998-4241
Peter.Kocoras@ThompsonHine.com

Brian K. Steinwascher
(*pro hac vice* application forthcoming)
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
(212) 908-3916
Brian.Steinwascher@ThompsonHine.com

*Attorneys for Petitioners*
*Caremark PHC, LLC, CaremarkPCS*
*Health, LLC, Caremark, LLC,*
*Caremark Rx, LLC, Aetna, Inc., and*
*Aetna Health, Inc.*