Jon T. Neumann, SBN 018858
neumannj@gtlaw.com
GREENBERG TRAURIG, LLP
2375 E. Camelback Road, Suite 700
Phoenix, AZ 85016
(602) 445-8000

Peter J. Kocoras (*pro hac vice* application forthcoming)
Peter.Kocoras@ThompsonHine.com
THOMPSON HINE LLP
20 North Clark Street, Suite 3200
Chicago, Illinois  60602-5093
Telephone: (312) 998-4241
Fax: (312) 998-4245

Brian K. Steinwascher (*pro hac vice* application forthcoming)
Brian.Steinwascher@ThompsonHine.com
THOMPSON HINE LLP
335 Madison Avenue, 12th Floor
New York, New York  10017-4611
Telephone: (212) 908-3916
Fax: (212) 344-6101

*Attorneys for Plaintiffs Caremark PHC, LLC; CaremarkPCS*
*Health, LLC; Caremark, LLC; Caremark Rx, LLC;*
*Aetna, Inc.; and Aetna Health, Inc.*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Caremark, LLC; Caremark PHC, LLC; CaremarkPCS Health, LLC; Caremark Rx, LLC; Aetna, Inc.; and Aetna Health, Inc., <br><br> Petitioners, <br><br> v. <br><br> The Choctaw Nation; the Choctaw Nation Health Services Authority; the Choctaw Health Care, Talihina, OK; the Choctaw Nation Health Clinic-Rubin White, Poteau; the Choctaw Nation Health Clinic-McAlester; the Choctaw Nation Health Clinic-Idabel; the Choctaw Nation Health Clinic-Stigler; the Choctaw Nation Health Clinic-Hugo; the Choctaw Nation Health Clinic-Atoka; the Choctaw Nation Heath Care Center Durant Pharmacy; and the Choctaw Nation Online Pharmacy Refill Center, <br><br> Respondents. | Case No.  2:21-cv-01554-SMB <br><br><br> **PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF PETITION TO COMPEL ARBITRATION** |

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 3

I.     The Nation's Pharmacies, Caremark, and the Complaint ........................ 3

II.    Procedural History .................................................................................... 6

III.   The Chickasaw Nation Litigation ............................................................ 8

SUMMARY OF ARGUMENT ......................................................................... 10

LEGAL STANDARD ........................................................................................ 11

ARGUMENT ..................................................................................................... 13

I.     The Arbitration Provision Requires Arbitration of the Nation's Dispute. ............. 13

       A.    The Arbitration Provision Is Valid .............................................. 13

       B.    The Valid Delegation Provisions Mean the Arbitrator Must Resolve the
             Threshold Issue of Arbitrability as the Parties Clearly Agreed .................... 16

       C.    The Nation's Claims Fall Within the Scope of the Arbitration Provision..... 20

       D.    This Court can Compel Arbitration of the Claims in the Nation's
             Complaint ..................................................................................... 21

II.    The Claims Against all Petitioners Are Subject to Arbitration .............................. 23

       A.    The Plain Terms of the Provider Agreement Permit all Petitioners to
             Submit the Threshold Issue of Arbitrability to the Arbitrator ...................... 23

       B.    The Arbitrator Must Decide the Threshold Issue of Arbitrability as
             to all Petitioners ............................................................................ 24

       C.    Arizona Law Permits Non-Parties to Arbitrate in Circumstances
             Like Those Here ............................................................................ 25

       D.    Equitable Estoppel Principles Permit all Petitioners to Compel Arbitration. 26

             1.    The Nation's Claims Are Intertwined With the Provider Agreement...... 27

             2.    The Nation Alleges a Relationship Among Petitioners That Supports
                   Estoppel ............................................................................. 28

III.   The Nation Cannot Avoid Submitting the Arbitrability of This Dispute to the
       Arbitrator by Claiming Sovereign Immunity ........................................................ 29

             1.    The Nation Cannot Invoke Sovereign Immunity Before  This Court ...... 29

             2.    The Arbitration Provision in all Provider Manuals Establishes a Waiver 30

CONCLUSION ................................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013).............................................................................................23

*Ansari v. Qwest Commc'ns Corp.*,
414 F.3d 1214 (10th Cir. 2005) ..........................................................................21

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009).....................................................................................26, 27

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011).............................................................................................12

*Benson v. Casa De Capri Enters., LLC*,
980 F.3d 1328 (9th Cir. 2020) ...........................................................................26

*Benton v. Clarity Servs.*,
No. 16-cv-06583-MMC, 2018 U.S. Dist. LEXIS 57762
(N.D. Cal. Apr. 4, 2018) ....................................................................................31

*Bowie's Priority Care Pharm., L.L.C. v. CaremarkPCS, L.L.C.*,
2018 WL 1964596 (N.D. Ala. Apr. 26, 2018) ..................................................15

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ............................................................... *passim*

*Brittania-U Nig., Ltd. v. Chevron USA, Inc.*,
866 F.3d 709 (5th Cir. 2017) .............................................................................25

*Burton's Pharm., Inc. v. CVS Caremark Corp.*,
2015 WL 5430354 (M.D.N.C. Sept. 15, 2015)..................................................15

*C & L Enters., Inc. v. Citizen Band of Potawatomi Indian
Tribe of Okla.*,
532 U.S. 411 (2001).....................................................................................30, 31

*Caremark LLC, et al. v. Chickasaw Nation, et al.*,
Civ. No. CV-21-00574-PHX-SPL, 2021 WL 2780859
(D. Ariz. July 2, 2021) ........................................................................2, 8, 17, 18

*City of Cottonwood v. James L. Fann Contracting, Inc.*,
877 P.2d 284 (Ariz. Ct. App. 1994)...................................................................14

*Cochrane v. Open Text Corp.*,
692 F. App'x 848 (9th Cir. 2017) ......................................................................19

iii

*CompuCredit Corp. v. Greenwood*,
   565 U.S. 95 (2012) ...................................................................................................23

*Crawford Proof's Drugs, Inc. v.  CVS Caremark Corp.*,
   748 F.3d 249 (5th Cir. 2014) ...............................................................15, 19, 26, 27

*CVS Pharm., Inc. v. Gable Family Pharm.*,
   2012 U.S. Dist. LEXIS 191047 (D. Ariz. Oct. 22, 2012).................................15, 27, 29

*Debesay v. Sec. Indus. Specialists*,
   2021 WL 962549 (W.D. Wash. Mar. 15, 2021) .................................................19

*Demontiney v. U.S. ex rel. Dep't of Interior, Bureau of Indian Affairs*,
   255 F.3d 801 (9th Cir. 2001) .........................................................................30

*Dorman v. Charles Schwab Corp.*,
   934 F.3d 1107 (9th Cir. 2019) ......................................................................22

*Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*,
   756 F.3d 1098 (8th Cir. 2014) ......................................................................25

*Edwards v. Vemma Nutrition*,
   2018 WL 637382 (D. Ariz. Jan. 30, 2018) .....................................................21

*Elem Indian Colony of Pomo Indians v. Pac. Dev. Partners X LLC*,
   2009 WL 10692978 (N.D. Cal. June 23, 2009) ...............................................30

*Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Props., Inc. v. Robson*,
   294 P.3d 125 (Ariz. Ct. App. 2012) ..........................................................25, 26

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018).............................................................................22, 23

*Fernandez v. Debt Assistance Network, LLC*,
   2020 U.S. Dist. LEXIS 20458 (S.D. Cal. Feb. 5, 2020) .....................................14

*Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*,
   103 F.3d 888 (9th Cir. 1996) .........................................................................22

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) .....................................................................................23

*Grasso Enters., L.L.C. v. CVS Health Corp.*,
   143 F. Supp. 3d 530 (W.D. Tex. 2015)...........................................................15

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000)......................................................................................23

*Green Tree Fin. Corp. v. Bazzle*,
   539 U.S. 444 (2003).....................................................................................19

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

*Guglielmo v. LG&M Holdings LLC*,
  2019 WL 3253190 (D. Ariz. July 19, 2019) ......................................................26

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ............................................................................... *passim*

*Hopkinton Drug, Inc. v. CaremarkPCS, L.L.C.*,
  77 F. Supp. 3d 237 (D. Mass. 2015) .................................................................15

*Jones v. Jacobson*,
  125 Cal. Rptr. 3d 522 (Cal. Ct. App. 2011) ......................................................26

*Jureczki v. Banc One Tex., N.A.*,
  252 F. Supp. 2d 368 (S.D. Tex. 2003) ..............................................................28

*Marselian v. Wells Fargo & Co.*,
  514 F. Supp. 3d 1166 (N.D. Cal. 2021) ............................................................19

*MedfusionRx, LLC v. Aetna Life Ins. Co.*,
  2012 U.S. Dist. LEXIS 191045 (S.D. Miss. Dec. 21, 2012) .............................15

*Metalclad Corp. v. Ventana Envtl. Org. P'ship*,
  1 Cal. Rptr. 3d 328 (Cal Ct. App. 2003) ...........................................................26

*Moore v. Browning*,
  50 P.3d 852 (Ariz. Ct. App. 2002) .....................................................................26

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .........................................................................................12, 21

*Muecke Co., Inc. v. CVS Caremark Corp.*,
  2012 WL 12535439 (S.D. Tex. Feb. 22, 2012) .................................................15

*Mundi v. Union Sec. Life Ins. Co.*,
  555 F.3d 1042 (9th Cir. 2009) .....................................................................13, 27

*Oglala Sioux Tribe v. C & W Enters.*,
  542 F.3d 224 (8th Cir. 2008) .............................................................................30

*Optimum Prods. v. HBO*,
  893 F. App'x 75 (9th Cir. 2020) ........................................................................19

*Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Pers. of Tex., Inc.*,
  343 F.3d 355 (5th Cir. 2003) .............................................................................19

*Pistor v. Garcia*,
  791 F.3d 1104 (9th Cir. 2015) ...........................................................................29

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ..................................................................................... *passim*

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

v

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
    490 U.S. 477 (1989)......................................................................................................23

*RX Pros, Inc. v. CVS Health Corp.*,
    2016 WL 316867 (W.D. La. Jan. 26, 2016) ...............................................................15

*Schoneberger v. Oelze*,
    96 P.3d 1078 (Ariz. Ct. App. 2004 ............................................................................26

*Shaw Grp., Inc. v. Triplefine Int'l Corp.*,
    322 F.3d 115 (2d Cir. 2003).........................................................................................19

*Shearson/Am. Express Inc. v. McMahon*,
    482 U.S. 220 (1987).....................................................................................................23

*Shields v. Frontier Tech., LLC*,
    2011 WL 13070409 (D. Ariz. Nov. 30, 2011) ...........................................................24

*Shivkov v. Artex Risk Sols., Inc.*,
    974 F.3d 1051 (9th Cir. 2020) ....................................................................................12

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ......................................................................................20

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ....................................................................................22

*Stevens/Leinweber/Sullens v. Holm Dev. & Mgmt.*,
    795 P.2d 1308 (Ariz. Ct. App. 1990)..........................................................................13

*Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010).....................................................................................................24

*Swiger v. Rosette*,
    989 F.3d 501 (6th Cir. 2021) ...............................................................................18, 24

*Thompson v. Isagenix Int'l, LLC*,
    2020 WL 1432840 (D. Ariz. Mar. 24, 2020)..............................................................12

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
    925 F.2d 1136 (9th Cir. 1991) ....................................................................................12

*Uptown Drug Co., Inc. v. CVS Caremark Corp.*,
    962 F. Supp. 2d 1172 (N.D. Cal 2013) .......................................................................15

*Vaden v. Discover Bank*,
    556 U.S. 49 (2009)..........................................................................................................7

*Val/Del, Inc. v. Super. Ct.*,
    703 P.2d 502 (Ariz. Ct. App. 1985)............................................................................30

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

*Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*,
    995 F. Supp. 1060 (D. Ariz. 1997) ......................................................................14

*Ventive, LLC v. Caring People, LLC*,
    2018 WL 4620609 (D. Idaho Sept. 26, 2018).....................................................22

**Statutes**

25 U.S.C. § 1621e................................................................................................1, 28, 29

28 U.S.C. § 1331.............................................................................................................7

A.R.S. § 12-1501 ....................................................................................................13, 14

A.R.S. § 14-10205 .......................................................................................................26

FAA § 3 ...........................................................................................................8, 9, 18

FAA § 4................................................................................................................ *passim*

**Other Authorities**

AAA, Rules, Forms Fees, R-52(c)...............................................................................31

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

The Choctaw Nation (the "Nation") has sued Petitioners and others in the United States District Court for the Eastern District of Oklahoma, alleging that Petitioners and other defendants have violated 25 U.S.C. § 1621e (the "Recovery Act") by failing to reimburse the Nation's pharmacies for certain pharmacy claims (the "Complaint"). The Nation owns and operates these pharmacies through the Choctaw Nation Health Services Authority ("CNHSA").

The Nation's relationship with Petitioner Caremark, LLC ("Caremark"), however, is governed by a Provider Agreement that incorporates a Provider Manual; together those documents govern the parties' relationship.[1] The Provider Manual contains an arbitration provision (the "Arbitration Provision"), whereby the parties expressly agreed to arbitrate in Arizona "[a]ny and all disputes . . . including but not limited to, disputes in connection with, arising out of, or relating in any way to" the Provider Agreement. The Arbitration Provision also contains a delegation clause that reserves for the arbitrator all issues involving the "interpretation, applicability, enforceability or formation of the agreement to arbitrate." Under Supreme Court precedent, this delegation clause requires the Court to refer the Nation's dispute to the arbitrator to resolve, in the first instance, threshold questions of arbitrability—including the Nation's defenses to arbitration and its challenges to the enforceability of the agreement.

Having received the economic benefits of the Provider Agreement for many years, the Nation and its pharmacies cannot now repudiate select obligations under that same agreement so that they can litigate in their preferred venue of the Eastern District of Oklahoma. Thus, the dispute in the Complaint, which unquestionably falls within the scope of the Arbitration Provision and its delegation clause, must be referred to the arbitrator in the first instance.

---

[1] Petitioners will refer to the iterations of the Provider Agreement and incorporated Provider Manual that the Nation's pharmacies have been subject to in the singular.

The Nation, however, has attempted to circumvent the valid delegation clause in the Arbitration Provision by filing the Complaint in the Eastern District of Oklahoma, and framing its claims as allegedly arising solely under the Recovery Act, not under the parties' contracts. (*See* Petition Ex. 1 (Compl.) ¶ 55 & n.17). In so doing, the Nation undermines the bargained-for benefits of the parties to the Provider Agreement. It also defies the underlying business realities: the Provider Agreement and incorporated Provider Manual set the terms and conditions for the reimbursement for each and every one of the pharmacy transactions at issue. Moreover, it contravenes the Provider Agreement's choice of venue provision, which requires disputes to be arbitrated in Arizona, and Tenth Circuit law, which limits the authority to compel arbitration to this Court.

Under the Federal Arbitration Act ("FAA") and Supreme Court precedent, the delegation clause in the Provider Manual assigns the threshold issue of the arbitrability of this dispute to an arbitrator. This applies to Caremark and the other Petitioners named in the Complaint, as both the plain terms of the Provider Agreement and well-recognized principles of law and estoppel mandate that the Nation and its pharmacies arbitrate their claims against them. Just two months ago, the District Court for the District of Arizona reached this conclusion *in a substantively identical case involving the Provider Agreement and Provider Manual brought by another Indian Nation*.[2]

Finally, the Nation cannot claim sovereign immunity to avoid submitting the issue of the arbitrability of this dispute to an arbitrator. That defense is inapplicable here for several reasons, not least that, under Supreme Court and Ninth Circuit precedent, the Nation waived sovereign immunity for this dispute by entering into the Provider Agreement and agreeing to the Arbitration Provision.

---

[2] *See Caremark LLC, et al. v. Chickasaw Nation, et al.*, Civ. No. CV-21-00574-PHX-SPL, 2021 WL 2780859 (D. Ariz. July 2, 2021).

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

## FACTUAL BACKGROUND

### I.     The Nation's Pharmacies, Caremark, and the Complaint

The Nation owns and operates the pharmacies identified in the Complaint and named as Respondents to this Petition.  (*See* Petition Ex. 1 (Compl.) ¶ 2 ("The Nation operates several pharmacies under the IHCIA (known as 'ITU Pharmacies') providing services to Members . . . ."); *id.* ¶ 73 & n.23).  Caremark provides pharmacy benefit management ("PBM") services to insurers, third-party administrators, business coalitions, and employer sponsors of group health plans.  (Petition ¶ 9; Harris Decl. ¶ 3).  The array of services Caremark and its affiliates offer their PBM clients includes the administration and maintenance of pharmacy networks.  (*Id.*)  In exchange for access to the sizable market of Caremark's PBM plans, the pharmacies included in the networks agree by contract to fill prescriptions for participants in Caremark's PBM clients' health plans and receive reimbursements for those prescriptions at rates specified in the contracts.  (*See id.*)

In 2005 and 2008, all but one of the Nation's pharmacies entered into the Provider Agreement with Caremark.  (Harris Decl., ¶¶ 19-25 and Exs. A-G).  In 2009, these same pharmacies and one other entered into a chain Provider Agreement.  (*Id.* ¶ 26 and Ex. H).[3] Each of these Provider Agreements expressly incorporates the Provider Manual, as amended from time to time.  (*See id.* Exs. A-H at § 11 ("[T]his Agreement [i.e. the Provider Agreement], the Provider Manual, and all other Caremark Documents constitute the entire agreement between Provider and Caremark, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the 'Provider Agreement' or 'Agreement.'"))  The 2020 Provider Manual specifically states that it is

---

[3] Exhibits A-F were signed by Reece W. Sherrill, CEO of Choctaw Nation Health Care, on behalf of the Nation, and Exhibits G-H were signed by Todd Hallmark, COO of the Choctaw Nation Health Services Authority, on behalf of the Nation.  Documentation submitted by the Nation with the 2009 Provider Agreement references the Choctaw Nation Health Services Authority.  (Harris Decl., ¶¶ 19-25 and Exs. A-G).

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

"part of the Provider Agreement and [is] incorporated into the Provider Agreement." (*Id.* Ex. Q at § 1, "General Information").

The Provider Manual governs all aspects of a pharmacy's relationship with Caremark, including the process for submitting pharmacy claims. Thus, any pharmacy participating in a Caremark network would necessarily need to review and understand the Provider Manual at the time it entered into a Provider Agreement, and each update, in order to properly submit claims to Caremark for reimbursement. Whenever there was a supplement or amendment to the Provider Manual, Caremark provided the updated version to the Nation's pharmacies. (*See* Harris Decl. ¶ 38 and Ex. R). For instance, in 2009, all pharmacies then in the Caremark network, including all of the Nation's pharmacies, were sent by Federal Express the 2009 Caremark Provider Manual. (*Id.* ¶ 30 & Ex. L). Additionally, each of the Nation's pharmacies has, on various dates, executed Network Enrollment Forms with Caremark, pursuant to which the pharmacy enrolled as a participant in the specific networks administered by Caremark. (*Id.* ¶ 13). The Provider Agreement, the Provider Manual, and Network Enrollment Forms signed by the pharmacies constitute the contractual relationship between the Nation's pharmacies and Caremark.

By accepting, acknowledging, and acting under the Provider Agreement, the Nation's pharmacies agreed to be bound by the Provider Manual in effect at the time, each of which included an arbitration provision. (*Id.* Ex. Q (Provider Manual) § 15.07). The most recent update and amendment to the Provider Manual was sent to the Nation's pharmacies in 2020. (*Id.* ¶ 38 and Ex. R). The 2020 Provider Manual is currently in effect, applicable to, and binding on any pharmacy that has Provider Agreements with Caremark and participates in the Caremark network—including all of the Nation's pharmacies—and the Arbitration Provision therein governs this dispute.

After receipt of each Provider Manual, the Nation's pharmacies continued their submission of pharmacy claims to Caremark, thereby further accepting and agreeing to

4

the terms of the updated Provider Manuals.  (*See* Harris Decl., ¶ 37 & Ex. Q (2020 Provider Manual) § 15.07, at 90).  Overall, from January 1, 2014 through July 1, 2021, the Nation's pharmacies have been paid in excess of $90,500,000 pursuant to the Provider Agreement and the Provider Manual.  (*Id.* ¶ 42).

The Nation was not required to enter into any Provider Agreement with Caremark, but the Nation chose to do so in order to effectuate its rights of reimbursement and cost recovery under the Recovery Act.  (*See* Petition Ex. 1 (Compl.) ¶ 55).  The benefits to the Nation and its pharmacies under the Provider Agreement include access to Caremark's eligibility information at the point of sale.  By using a third-party subscription service, the Nation and its pharmacies can determine whether one of its members who presents a prescription in one of the Nation's pharmacies is eligible for prescription benefit coverage through a plan administered by Caremark.  The Nation and its pharmacies also can call a Caremark help desk to inquire about a member's eligibility.  Pursuant to the parties' contractual relationship, the Nation and its pharmacies have an ability to submit prescriptions electronically in real time to Caremark at the point of sale, though the pharmacies often submit pharmacy claims electronically to Caremark after the prescriptions have been dispensed.  (Harris Decl. ¶ 15).  These are substantial logistical and economic benefits to the Nation's recovery efforts.

As with any contract, however, in exchange for these benefits the Nation and its pharmacies have agreed to certain terms and conditions.  One of these is the Arbitration Provision, and in particular the requirement that the parties submit the issue of the arbitrability of any dispute between the parties to an arbitrator—including, as discussed below, any dispute regarding the Nation's rights under the Recovery Act pertaining to its pharmacies' claims, and any dispute relating to its pharmacies' participation in any of Caremark's networks.  Specifically, the Arbitration Provision in the current Provider Manual provides in relevant part:

> Any and all disputes between Provider and Caremark ***[including Caremark's current, future, or former employees, parents, subsidiaries,***

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

5

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

***affiliates, agents and assigns (collectively referred to in this Arbitration section as "Caremark")]***, including but not limited to, disputes in connection with, arising out of, or relating in any way to, the Provider Agreement ***or to Provider's participation in one or more Caremark networks or exclusion from any Caremark networks***, will be exclusively settled by arbitration. This arbitration provision applies to any dispute arising from events that occurred before, on or after the effective date of this Provider Manual. Any dispute otherwise arbitrable hereunder shall be deemed waived, and no such dispute shall be made or raised, unless a Dispute Notice has been given to Caremark, or arbitration filed, as provided below. Unless otherwise agreed to in writing by the parties, the arbitration shall be administered by the American Arbitration Association ("AAA") pursuant to the then applicable AAA Commercial Arbitration Rules and Mediation Procedures including the rule governing Emergency Measures of Protection (available from the AAA). In no event may the arbitrator(s) award indirect, consequential, or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation, or loss of customers or business, except as required by Law.

***The arbitrator(s) shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of the agreement to arbitrate, including but not limited to, any claim that all or part of the agreement to arbitrate is void or voidable for any reason***. In the event the arbitrator(s) determine that any provision of this agreement to arbitrate is invalid for any reason, such provision shall be stricken and all remaining provisions will remain in full force and effect. The arbitrator(s) must follow the rule of Law, and the award of the arbitrator(s) will be final and binding on the parties, and judgment upon such award may be entered in any court having jurisdiction thereof. Any such arbitration must be conducted in Scottsdale, Arizona and Provider agrees to such jurisdiction, unless otherwise agreed to by the parties in writing.

(Harris Decl. Ex. Q (2020 Provider Manual) § 15.09, at 91) (emphasis added).  The Arbitration Provision also states that it "shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16." (*Id.*).

## II.   Procedural History

On April 26, 2021, the Nation filed its Complaint in the District Court for the Eastern District of Oklahoma against Petitioners Caremark, Caremark PHC, LLC, CaremarkPCS Health, LLC, Caremark Rx, LLC, Aetna, Inc., and Aetna Health, Inc

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

(collectively referred to in the Complaint as "Defendants" but referred to here as "Petitioners").[4]   In its Complaint, the Nation principally alleges a violation of the Recovery Act by Caremark and the other Petitioners for their alleged failure to reimburse its pharmacies for pharmacy claims.[5]   (*See, e.g.*, Petition Ex. 1 (Compl.) ¶ 79 (alleging the Petitioners "violate[d]" the Recovery Act by "denying claims for covered medications the Nation submitted on behalf of covered Member-patients")).   The Nation contends that its pharmacies are "exempt" from specified reasons for denial under the Recovery Act. (*Id.* ¶ 83).   The Nation makes a similar claim based on allegations about "drug discount programs."   (*See id.* ¶¶ 86-103).   The applicable statute of limitations is six years before commencement of the action (*id.* ¶ 58), which means that the Nation is alleging claims from 2015 onward.

After being served with the Complaint, and pursuant to the terms of the Arbitration Provision, on July 8, 2021, Petitioners sent the Nation "Dispute Notice" letters, seeking to resolve the dispute raised in the Complaint in accordance with the terms of the Arbitration Provision.   (*See* Petition Ex. 2).   In a letter dated July 14, 2021, the Nation through its counsel responded by asserting that the Arbitration Provision does not apply to this dispute.   (*See* Petition Ex. 3).

Petitioners now bring their Petition to Compel Arbitration of the dispute in the Nation's Complaint, supported by the Declaration of Stephanie Harris, with exhibits, and this Memorandum of Law.   Simultaneously, Petitioners are seeking before the District Court for the Eastern District of Oklahoma a stay of all proceedings related to Complaint.

---

[4] The Complaint also includes identical claims, based on the same allegations, against OptumRx, Inc., OptumRx Holdings, LLC, Optum, Inc., UnitedHealth Group, Inc., and United Healthcare Services, Inc; those parties are not before the Court in this Petition.

[5] Thus, this Court has jurisdiction over the instant Petition pursuant to 28 U.S.C. § 1331. *See Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009) ("A federal court may 'look through' a [FAA] § 4 petition to determine whether it is predicated on an action that 'arises under' federal law . . . ."), *superseded by statute on other grounds*, 803 F.3d 635 (Fed. Cir. 2015).

### III.    The Chickasaw Nation Litigation

On December 29, 2020, the Chickasaw Nation, represented by the same counsel representing the Choctaw Nation in the Oklahoma litigation, filed in the District Court for the Eastern District of Oklahoma a complaint nearly identical to the Choctaw Nation's complaint, against the same Petitioners but one, asserting substantively identical allegations and the same causes of action under the Recovery Act.  *See The Chickasaw Nation v. CVS Caremark LLC et al.*, Civ. No. 20-488-PRW (E.D. Okla.).  Notably, both the Chickasaw Nation complaint and the Choctaw Nation complaint: (i) share over 100 identical paragraphs of factual allegations; (ii) seek identical relief; (iii) are brought by federally-recognized Tribal Nations that operate ITU pharmacies; (iv) allege the same right of Tribal Nations to recoup costs of covered pharmacy services; and (v) are signed by the same legal counsel, who is representing both Tribal Nations in the respective proceedings.  Like here, Petitioners (i) moved to stay the proceedings in Oklahoma pursuant to Section 3 of the FAA, and (ii) filed a petition to compel arbitration in Arizona pursuant to Section 4 of the FAA, which was assigned to Judge Logan, U.S.D.J.  *See Caremark LLC, et al. v. Chickasaw Nation, et al.*, Civ. No. CV-21-00574-PHX-SPL, ECF No. 1 (D. Ariz. Apr. 2, 2021) (the "Chickasaw Nation Litigation").  On July 2, 2021, the Court in the Chickasaw Nation Litigation granted the petition, and directed the parties to submit their dispute to the AAA, pursuant to the Arbitration Provision and delegation clause, to have the arbitrator decide the arbitrability of the dispute in the first instance.  *See generally id.*, Order Compelling Arbitration (ECF No. 28).  In ordering arbitration, the Court held: "Each of Chickasaw's pharmacies has a current contract with Caremark. These contracts contain arbitration agreements."  *Id.* at 1 (ECF No. 28) (citations omitted).  That Court also found that delegation clause in the Arbitration Provision "to be *clear and unmistakable*: The parties clearly agreed that the arbitrator(s), not the court, would decide the threshold issue of arbitrability."  *Id.* at 5 (ECF No. 28) (emphasis added).  The Court held that Supreme Court precedent required it to enforce this

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

8

delegation clause: "In *Rent-A-Center*, the Supreme Court reaffirmed the principle that courts must enforce the parties' 'agreement to arbitrate threshold issues' regarding the arbitrability of their dispute, and may do so by staying federal litigation under section 3 of the FAA or compelling arbitration under section 4." *Id.* (ECF No. 28) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010)).   Accordingly, the Chickasaw Nation Litigation Court compelled arbitration and required the parties to submit the issue of the arbitrability of the dispute to the arbitrator.  *Id.* (ECF No. 28.)

On August 4, the Court in the Chickasaw Nation Litigation denied a motion to stay pending appeal brought by the Chickasaw Nation and, in so doing, reaffirmed the order compelling arbitration.  *Chickasaw Nation Litig.*, Order Denying Stay Pending Appeal (ECF No. 38).  In holding that the Chickasaw Nation failed to demonstrate a likelihood of success on appeal, that Court explained that, pursuant to the delegation clause, "the Court did not decide the question of whether the [Chickasaw] Nation was bound by the arbitration agreement, and instead deferred the issue to the arbitrator." (*Id.* at 3).  The Chickasaw Nation Litigation Court explained that "ample caselaw exists establishing that an arbitrator must decide the threshold issue of arbitrability where the parties so clearly agreed," (*id.* (collecting cases)) and noted "Respondents provide no Ninth Circuit law to the contrary." (*Id.*).  That Court explained that under *Rent-A-Center*, 561 U.S. 63, where there is a delegation clause, "'if a party challenges the enforceability of the agreement as a whole, the challenge is for the arbitrator.'" (*Id.*)  Noting that the Chickasaw Nation did not specifically challenge the enforceability of the delegation clause, "[i]nstead, it challenges whether the agreement as a whole can be enforced," that Court concluded, it "did not err in deferring [the Chickasaw Nation's challenges to arbitration] to the arbitrator." (*Id.* at 4).[6]

---

[6] On August 20, 2021, the Ninth Circuit issued a summary order granting the Chickasaw Nation's motion for a stay of the order compelling arbitration pending appeal but did not explain its reasons for doing so.  (*Chickasaw Nation Litig.*, ECF No. 39).

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

## **SUMMARY OF ARGUMENT**

The Nation has a contract with Petitioners that includes a valid and enforceable Arbitration Provision with a delegation clause.  Pursuant to that delegation clause and binding Supreme Court precedent, the issue of the arbitrability of this dispute—including any defenses based on sovereign immunity or on whether a claim under the Recovery Act can be arbitrated—must be submitted to the arbitrator in the first instance.  Given the identical claims based on substantively identical facts, under a substantively identical agreement, that exists between the instant dispute and the Chickasaw Nation Litigation, the same outcome should result:  The arbitrator, not the Court, must decide the threshold issue of arbitrability because the parties clearly so agreed.  (*See Chickasaw Nation Litig.*, ECF No. 38, at 3 ("[A]mple caselaw exists establishing that an arbitrator must decide the threshold issues of arbitrability where the parties so clearly agreed."); *see also* Harris Decl. Ex. Q (2020 Provider Manual) § 15.09, p. 91 ("The arbitrator(s) shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of the agreement to arbitrate, including but not limited to, any claim that all or part of the agreement to arbitrate is void or voidable for any reason.")).

Even if this Court were to decide arbitrability, which it should not, the dispute in the Complaint is subject to arbitration.  The Nation, as owner and operator of its pharmacies, expressly agreed that all disputes "in connection with, arising out of, or relating in any way to" the Provider Agreement "will be exclusively settled by arbitration" in accordance with the rules of the American Arbitration Association in Scottsdale, Arizona.  (*See* Harris Decl. Ex. Q, Provider Manual, § 15.09, p. 91).  Having received the economic benefits of the Provider Agreement for years, the Nation and its pharmacies cannot now repudiate select obligations under that same agreement because of a preference for federal court in Oklahoma.

There can be no doubt that the Nation's claims in the Complaint fall squarely under the Arbitration Provision.  Those claims must therefore be submitted to arbitration

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

in Arizona.  At least ten other federal courts have held that claims by pharmacies with arbitration agreements similar or identical to the one at issue here must submit their claims to arbitration in Arizona.

That the Nation filed its Complaint in the Eastern District of Oklahoma asserting a violation of the Recovery Act does not alter this result.  This Petition is properly venued and brought in this Court under the FAA.  Indeed, under Tenth Circuit law and the applicable venue clause in the Arbitration Provision, Petitioners are required to file their Petition in Arizona to resolve this dispute by agreed upon arbitration in that venue.  And it is well-established that statutory rights of any type can be subject to arbitration.

Finally, the Nation cannot invoke sovereign immunity as a defense to Petitioners' arbitration demand.  First, sovereign immunity is not implicated where, as here, the Nation is and will be the plaintiff in all proceedings and will face no claims against it. Second, under the circumstances here, the delegation clause means the arbitrator and not the Court should resolve any claim of sovereign immunity.  *See Chickasaw Nation Litig.*, ECF No. 38, at 4 (rejecting contention that the Chickasaw Nation would suffer irreparable harm to its sovereign immunity if it was compelled to arbitrate: "The Court did not require that [Respondents] arbitrate their claims.  It did not take any position on the arbitrability of [Respondents'] claims.  Rather, it deferred that threshold question of whether the claims must be arbitrated, including the question of whether the [Chickasaw] Nation agreed to arbitration, to the arbitrator.").  Third, under Supreme Court precedent, by entering into the Provider Agreement and thereby agreeing to arbitrate disputes in Arizona, pursuant to AAA rules, and under Arizona law, the Nation clearly and unequivocally waived sovereign immunity for the purpose of resolving disputes relating to that Provider Agreement.

## LEGAL STANDARD

The FAA provides that a court, upon determining that an action before it is subject to an enforceable arbitration agreement, "*shall* . . . make an order directing the parties to

proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (emphasis added). The FAA embodies a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA thus creates a "presumption in favor of arbitration." *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1063 (9th Cir. 2020) (internal quotation marks omitted), *cert. denied*, 2021 WL 2637867 (June 28, 2020). "'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1139 (9th Cir. 1991) (quoting *Mercury Constr.*, 460 U.S. at 24)).

Ordinarily, courts assess two issues to determine whether the FAA's mandate for compelling arbitration applies: (1) whether a valid arbitration agreement exists; and (2) whether the agreement encompasses the dispute at issue. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Thompson v. Isagenix Int'l, LLC*, 2020 WL 1432840, at *2 (D. Ariz. Mar. 24, 2020), *aff'd*, 849 F. App'x 712 (9th Cir. 2021). Thus, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue," including whether the agreement is enforceable. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). In those circumstances, under *Rent-A-Center*, courts honor delegation clauses unless (1) a party specifically objects to the validity of the delegation clause, *and* (2) the delegation clause is indeed unenforceable. *See* 561 U.S. at 68-75; *Brennan* 796 F.3d at 1132-33 (court need not consider argument that arbitration clause as a whole is unconscionable where party seeks only to enforce delegation clause).

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

## ARGUMENT

**I.     The Arbitration Provision Requires Arbitration of the Nation's Dispute.**

**A.     The Arbitration Provision Is Valid.**

In determining the validity of an arbitration agreement, courts "apply general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

The Provider Agreement is "[to] be construed, governed and enforced in accordance with the laws of the State of Arizona," *see* Harris Decl., Exs. A-H (Provider Agreement) ¶ 13, and the Arbitration Provision and its delegation clause are unquestionably valid under Arizona law.  "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." A.R.S. § 12-1501.  "Th[is] statute provides for invalidation of an arbitration provision on the same basis as any other contract." *Stevens/Leinweber/Sullens v. Holm Dev. & Mgmt.*, 795 P.2d 1308, 1311-12 (Ariz. Ct. App. 1990) (explaining ground for revoking contract include "lack of mutual consent, consideration or capacity or voidable for fraud, duress, lack of capacity, mistake, or violation of a public purpose" (citation omitted)).  Notably, under Arizona law, like federal law, the validity both of an arbitration clause and of a delegation clause contained therein are each separate questions from the *enforceability* of the arbitration agreement or contract as a whole. *See id.* at 1312.  As explained further below, where a party challenges only the enforceability of the agreement as a whole, that challenge may be heard by the arbitrators in the first instance if the parties' agreement includes a valid delegation clause. *See Rent-A-Center*, 561 U.S. at 71.

Here, the Arbitration Provision and the delegation clause are both valid because

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

13

they each are "a written contract to submit to arbitration any controversy thereafter arising between the parties." A.R.S. § 12-1501. And though the question is for the arbitrator to decide pursuant to the delegation clause, the Arbitration Provision is also enforceable. Under Arizona law, an arbitration provision is enforceable if the parties mutually consented to be bound by the agreement, the agreement is supported by adequate consideration, and no defense such as fraud or mistake exists. *City of Cottonwood v. James L. Fann Contracting, Inc.*, 877 P.2d 284, 289-92 (Ariz. Ct. App. 1994). The Arbitration Provision is enforceable because it contains mutual promises to submit to arbitration, which is all that Arizona law requires. *Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*, 995 F. Supp. 1060, 1066-67 (D. Ariz. 1997). And the Arbitration Provision is clear, legible, written in plain language, and equally binding on both parties. *See Fernandez v. Debt Assistance Network, LLC*, 2020 U.S. Dist. LEXIS 20458, at *30 (S.D. Cal. Feb. 5, 2020) (arbitration provision subjecting any controversy or claim arising out of or related to the subject of the contract bound both parties equally).

Each of the Nation's pharmacies has been a party to the Provider Agreement for years, and at all times the Nation has treated the Provider Agreement as valid and effective and has received the benefits thereunder. (*See* Harris Decl., ¶¶ 10-13, 18-27, 42-43). Between January 2014 and July 2021 alone, the Nation's pharmacies have received over $90,500,000 in reimbursements from Caremark. (*See id.* ¶ 42). Indeed, the Nation has accepted the terms of the most recent Provider Manual by continuing to submit claims to Caremark after its receipt. (*Id.* ¶ 37 & Ex. Q (2020 Provider Manual) § 15.07). Having received the economic benefits of the Provider Agreement, the Nation and its pharmacies cannot now repudiate their obligations thereunder.

The Court's reasoning in the Chickasaw Nation Litigation is fully applicable here. In the first paragraph of the order compelling arbitration, the Court held that (1) each of the pharmacy Respondents had a valid and current contract with Claimants, and (2) the contracts contain enforceable arbitration provisions. *Chickasaw Nation Litig.*, ECF No.

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

28, at 1 ("Each of Chickasaw's pharmacies has a current contract with Caremark.  These contracts contain arbitration agreements.")

And at least 10 other federal courts have held that the Provider Agreement incorporates the arbitration agreement within the Provider Manual by reference and binds the parties to that contract.  *See Bowie's Priority Care Pharm., L.L.C. v. CaremarkPCS, L.L.C.*, 2018 WL 1964596, at *7 (N.D. Ala. Apr. 26, 2018) (enforcing the 2018 Provider Manual's broad arbitration provision); *RX Pros, Inc. v. CVS Health Corp.*, 2016 WL 316867, at *3-4 (W.D. La. Jan. 26, 2016) (granting Caremark's motion to compel arbitration after analyzing 2016 Provider Manual's arbitration provision); *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 259–63 (5th Cir. 2014) (compelling arbitration and holding that whether claims were arbitrable was for arbitrator to decide); *Grasso Enters., L.L.C. v. CVS Health Corp.,* 143 F. Supp. 3d 530, 544 (W.D. Tex. 2015) (granting motion to compel arbitration); *Hopkinton Drug, Inc. v. CaremarkPCS, L.L.C.*, 77 F. Supp. 3d 237, 249 (D. Mass. 2015) (granting motion to compel arbitration); *Uptown Drug Co., Inc. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1183–86 (N.D. Cal 2013) (holding arbitration provision could be enforced); *Burton's Pharm., Inc. v. CVS Caremark Corp.*, 2015 WL 5430354, at *12 (M.D.N.C. Sept. 15, 2015) (granting motion to compel arbitration and stay action), *report and recommendation adopted*, 2015 WL 5999386, at *1 (M.D.N.C. Oct. 14, 2015); *MedfusionRx, LLC v. Aetna Life Ins. Co.*, 2012 U.S. Dist. LEXIS 191045, at *17 (S.D. Miss. Dec. 21, 2012) (granting motion to compel arbitration); *CVS Pharm., Inc. v. Gable Family Pharm.*, 2012 U.S. Dist. LEXIS 191047, at *37 (D. Ariz. Oct. 22, 2012) (granting motion to compel arbitration); *Muecke Co., Inc. v. CVS Caremark Corp.*, 2012 WL 12535439, at *19-23 (S.D. Tex. Feb. 22, 2012) (granting motion to compel arbitration), *report and recommendation adopted*, 2012 WL 12535440, at *1 (S.D. Tex. Mar. 29, 2012), *modified*, 2014 WL 11342572, at *6 (S.D. Tex. June 27, 2014), *aff'd*, 615 F. App'x 837, 841–42 (5th Cir. 2015).

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

15

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

**B.** **The Valid Delegation Provisions Mean the Arbitrator Must Resolve the Threshold Issue of Arbitrability as the Parties Clearly Agreed.**

The Arbitration Provision's delegation clause vests the arbitrator with "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of the agreement to arbitrate." (Harris Decl. Ex. Q (2020 Provider Manual) § 15.09, p. 91.). The Nation contends that the arbitration provision is not enforceable here because of the Nation's sovereign immunity and because the Recovery Act purportedly guarantees that the Nation can pursue its claims in court, not in arbitration. (*See* Petition, Ex. 3 (July 14, 2021 Nation Response to Arbitration Demand Letter.) But those are arguments about the *enforceability* of the arbitration agreement. Under the parties' delegation clause, the arbitrator must decide those arguments in the first instance.

The parties' delegation clause is indistinguishable from the clause in *Rent-A-Center*. Because the Nation does not specifically object to its validity, the Court must honor the delegation clause and leave all questions of enforceability to the arbitrator. 561 U.S at 68-75; *Brennan*, 796 F.3d at 1132-33; *see also Henry Schein*, 139 S. Ct. at 530 ("[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute[,] but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." (citation omitted)). Challenges to the enforceability of an arbitration agreement as a whole, like those the Nation raises here, do *not* impugn the delegation clause, and thus must go to the arbitrators in the first instance. *Rent-A-Center*, 561 U.S. at 71, 73 (explaining that an argument "that the *entire arbitration agreement*, including the delegation clause, was unconscionable" was not "specific to the delegation provision," should be resolved by the arbitrator, not the court, in the first instance); *see Henry Schein*, 139 S. Ct. at 530 ("'[A]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.'" (quoting *Rent-A-Center*, 561 U.S. at 70)); *see also Chickasaw Nation Litig.*, ECF No. 38, at 3-4

(relying on *Rent-A-Center* to refer dispute to arbitration because the Chickasaw Nation "does not specifically challenge the enforceability of the provision that requires the arbitrability question be decided by the arbitrator [but i]nstead, it challenges whether the agreement as a whole can be enforced against it").

The Nation has not disputed the existence of the parties' agreements or the validity of the delegation provision.  Instead, the Nation argues only that the Nation's sovereign immunity and the Recovery Act preclude arbitration.  (*See* Petition, Ex. 3 (July 14, 2021 Choctaw Nation Response to Arbitration Demand Letter) ("The Choctaw Nation did not clearly and unequivocally agree to the arbitration provision cited in your letters . . . . [T]he Nation never waived sovereign immunity.")).  In other words, the basis of the Nation's challenge is whether the agreement as a whole is enforceable in light of the Nation's claimed sovereign immunity and argument that the Recovery Act displaces the agreement.  These objections to arbitration are not "directed specifically" to the delegation provision, *id.* at 71, but rather are directed "to another provision of the contract, or to the contract as a whole."  *Id*. at 70; *see also Brennan*, 796 F.3d at 1133.  Moreover, the Nation does not dispute that it agreed to and is receiving benefits from and is otherwise performing under the Provider Agreement and incorporated Provider Manual—nor could it.  (*See* Harris Decl. ¶¶ 42-43).  The Nation cannot nullify a portion of the contract (the Arbitration Provision) without seeking to void the contract in its entirety.  In any event, the delegation clause is wholly enforceable, and like the Court in the Chickasaw Nation Litigation, this Court should hold that the arbitrator must decide all challenges to the arbitrability of the Nation's dispute.  *Rent-A-Center*, 561 U.S. at 68.

The Court's reasoning in the Chickasaw Nation Litigation applies with equal force here.  The Court there analyzed the issue of arbitrability and, specifically, the Chickasaw Nation's assertion that the FAA requires that the Court, rather than the arbitrator, decide whether the claims at issue are arbitrable.  *Chickasaw Nation Litig.*, 2021 WL 2780859, at *3.  The Court in the Chickasaw Nation Litigation found the delegation clause—

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

17

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

identical to the one here—"to be *clear and unmistakable*: The parties clearly agreed that the arbitrator(s), not the court, would decide the threshold issue of arbitrability." *Id.* (emphasis added).

The Chickasaw Nation Litigation Court held that Supreme Court precedent required enforcement of this delegation clause: "In *Rent-A-Center*, the Supreme Court reaffirmed the principle that courts must enforce the parties' 'agreement to arbitrate threshold issues' regarding the arbitrability of their dispute, and may do so by staying federal litigation under section 3 of the FAA or compelling arbitration under section 4." *Id.* (quoting *Rent-A-Center*, 561 U.S. at 70). This reasoning is fully consistent not just with *Rent-A-Center* but also the Supreme Court's decision in *Henry Schein*. Under *Henry Schein*, the Court must order the parties here to submit the question of arbitrability to the arbitrator: "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true *even if* the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." 139 S. Ct. at 529 (emphasis added); *see id.* at 528 ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."); *Brennan*, 796 F.3d at 1130-31; *accord Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) ("A valid delegation clause precludes courts from resolving any threshold arbitrability disputes, even those that appear 'wholly groundless.'" (quoting *Henry Schein*, 139 S. Ct. at 529)).[7]

The Arbitration Provision in this case is identical to the one in the Chickasaw Nation Litigation and contains two delegation provisions—each of which supports the conclusion that the arbitrator, and not this Court, should decide all arbitrability issues. First, the parties incorporated into the Arbitration Provision the AAA Commercial

---

[7] This is because the delegation provision is itself a "severable arbitration agreement []" between the parties. *Brennan*, 796 F.3d at 1133.

Arbitration Rules, which, standing alone, is sufficient to establish that the parties agreed to delegate all issues, including gateway issues concerning arbitrability, to the arbitrator. *Brennan*, 796 F.3d at 1130; *see also Cochrane v. Open Text Corp.*, 692 F. App'x 848, 849 (9th Cir. 2017); *Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166, 1177 (N.D. Cal. 2021) (holding that, where agreement incorporated AAA rules, "[b]ecause the arbitrability of this dispute is itself a question for an arbitrator, it is neither necessary nor appropriate for the Court to consider the parties' positions regarding the scope and validity of the arbitration agreement"); *accord Crawford*, 748 F.3d at 262-63.

Second, the Arbitration Provision contains an explicit delegation clause: "The arbitrator(s) shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of the agreement to arbitrate . . . ." (Harris Decl. Ex. Q (2020 Provider Manual) § 15.09, p. 91.)  This language clearly provides that the arbitrator, not a court, is to resolve disputes over the arbitrator's authority, including whether the dispute is subject to arbitration in the first instance.  *See, e.g.*, *Debesay v. Sec. Indus. Specialists*, 2021 WL 962549, at *2 (W.D. Wash. Mar. 15, 2021) (delegation provision required arbitration of "all disputes" including "'[d]isputes over the arbitrability of any controversy or claim which arguably is or may be subject to [the Arbitration Agreements].'" (citation and emphasis omitted)).[8]

---

[8] *See also Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003) (holding arbitration clause contains "sweeping language concerning the scope of the questions committed to arbitration, [so] this matter of contract interpretation should be for the arbitrator, not the courts, to decide"); *Optimum Prods. v. HBO*, 893 F. App'x 75, 78 (9th Cir. 2020) ("[W]here . . .  the agreement contains a broad arbitration clause covering all disputes concerning the meaning of the terms and provisions of the agreement . . . [d]isputes over [the agreement] must be submitted to arbitration." (internal quotations omitted)); *accord Shaw Grp., Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (contract's provision that all disputes "concerning or arising under" the contract shall be submitted to arbitration evinced a "clear and unmistakable agreement to arbitrate arbitrability" (internal quotations omitted)); *Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Pers. of Tex., Inc.*, 343 F.3d 355, 358-59 (5th Cir. 2003) (explaining that *Green Tree* held that "arbitrators should be the first ones to interpret the parties' [arbitration] agreement").

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

"When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein*, 139 S. Ct. at 529. Here, the delegation clause is valid, and therefore the Court must defer to the parties' agreement that all challenges to the enforceability of the agreement be decided by the arbitrator in the first instance.

## C. The Nation's Claims Fall Within the Scope of the Arbitration Provision.

Even if this Court, and not the arbitrator, were to decide the issue of arbitrability (which the Court should not), the Court should compel arbitration because there is no doubt that the Nation's dispute is subject to the Arbitration Provision.

The Nation's dispute over the reimbursement of pharmacy claims unquestionably falls within the Arbitration Provision because it is "in connection with, arises out of, or relates" to the Provider Agreement. The Ninth Circuit has held that to determine whether a dispute is arbitrable under this broad language, the "factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)). The allegations in the Complaint readily satisfy this standard.

The dispute in the Complaint clearly "touch[es] matters" covered by the Provider Agreement. Although the Nation characterizes the dispute as one involving the Recovery Act, Caremark's payment and rejection of claims submitted by the Nation's pharmacies are the bases for all of the Nation's claims in the Complaint. (*E.g.*, Petition Ex. 1 (Compl.) ¶ 104 (describing the dispute as pertaining to the Nation's "demands for (a) payment of wrongfully denied claims and (b) an explanation of the delay in payment of claims submitted")). The Nation's pharmacies' submission of claims for payment to Caremark, in its capacity as a PBM, not only "touches" the Provider Agreement—it goes to the very core of it. Indeed, the Nation's allegations in its Complaint, (*see generally id.*), cannot be considered without dissecting the pharmacy transactions, which are

20

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

categorically and wholly governed by the Provider Agreement and incorporated Provider Manual, which addresses all aspects of the parties' relationship and dealings.  *See, e.g.*, *Edwards v. Vemma Nutrition*, 2018 WL 637382, at *9 (D. Ariz. Jan. 30, 2018) ("Because Plaintiff is a distributor within the meaning of the Arbitration Provision and his claims arise out of a relationship with Vemma, his claims are subject to arbitration.").  These documents memorialize the entire contractual relationship between Caremark and the Nation and its pharmacies; these documents establish the amounts paid to the Nation and its pharmacies for all prescriptions as well as the specific networks in which the Nation and its pharmacies can participate.  (Harris Decl. ¶ 17.)

In sum, the Nation's dispute is a dispute between the parties to the Provider Agreement, and certainly one that has occurred in connection with, arises out of, and relates to the Provider Agreement.  Should there be any question about whether the Nation's claims fall within the scope of the Arbitration Provision (which there is not), ambiguities regarding the scope of arbitration must be resolved in favor of arbitration. *Mercury Constr.*, 103 S. Ct. at 941 n.27.

**D.    This Court can Compel Arbitration of the Claims in the Nation's Complaint.**

Neither the fact that the Nation's Complaint was filed in Oklahoma nor that the Complaint asserts a violation of the Recovery Act prevents this Court from compelling arbitration pursuant to § 4 of the FAA.

Section 4 permits a party to commence an action to compel arbitration in "any United States district court which . . . would have jurisdiction under Title 28."  9 U.S.C. § 4.  The Ninth Circuit has explained that this statutory language does not require a petition to be filed in any specific district; however, "by its terms, § 4 . . . confines the arbitration to the district in which the petition to compel is filed."  *Textile Unlimited v. A..bmhand Co.*, 240 F.3d 781, 785 (9th Cir. 2001)  Likewise, the Tenth Circuit has held that "where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4."  *Ansari v. Qwest Commc'ns Corp.*,

414 F.3d 1214, 1219-20 (10th Cir. 2005); *see also Chickasaw Nation Litig.*, ECF No. 28, at 4 (holding that application of the first-to-file rule would be inequitable here: "[I]f this Court were to apply the first-to-file rule and defer to the Oklahoma court on the arbitration issue, and the Oklahoma court were to find that the claims in this case were subject to arbitration, [that] court could not enforce the agreement and compel arbitration.").

The Arbitration Provision provides for arbitration to occur in Scottsdale, Arizona, so Petitioners appropriately filed the instant Petition in the District of Arizona, i.e., the district court in that forum.  Under *Textile Unlimited*, venue is proper before this Court under section 4, and this Court can exercise jurisdiction over the Nation, CNHSA, and the Nation's pharmacies by virtue of the Provider Agreement.[9]  *See Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 894 (9th Cir. 1996).

That the Nation is alleging a violation of the Recovery Act does not permit the Nation, its CNHSA, or its pharmacies, to avoid submitting the arbitrability of this dispute to an arbitrator.  The Nation in the Complaint disclaims that its claims are brought under "any provider agreement."  (Petition Ex. 1 (Compl.) ¶ 55 n.17).  But this conclusory allegation is not plausible, *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), and does not change the fact that, as explained *supra*, the Nation's Recovery Act claim unquestionably is connected with, arises out of, and relates to the Provider Agreement.

"[T]he Supreme Court has ruled that arbitrators are competent to interpret and apply federal statutes."  *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107, 1111 (9th Cir. 2019) (citing *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)).  Thus, time and again, the Supreme Court has upheld arbitration of important federal statutory claims.  *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) (Fair Labor

---

[9] Specifically, this Court can exercise its jurisdiction over the Nation for the purposes of compelling arbitration because the Provider Agreement requires that the Nation submit this dispute to arbitration in Arizona and that Arizona law governs.  *See, e.g.*, *Ventive, LLC v. Caring People, LLC*, 2018 WL 4620609, at *3 (D. Idaho Sept. 26, 2018) ("[I]t seems clear that Avior's agreement to arbitrate in Idaho at least allows Idaho courts to exercise personal jurisdiction over Avior in cases related to that arbitration agreement.").

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

Standards Act); *Am. Express*, 570 U.S. at 234 (Sherman Act); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 101 (2012) (Credit Repair Organization Act); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) (Truth In Lending Act); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 481 (1989) (Securities Act of 1933); *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (Securities Exchange Act of 1934 and Racketeer Influenced and Corrupt Organizations Act); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (Age Discrimination in Employment Act of 1967). In short, it is "clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer*, 500 U.S. at 26.[10]

*CompuCredit* and *Epic Systems* in particular make clear that when Congress wishes to preclude arbitration, it explicitly says so by using the word "arbitration." The Recovery Act contains no such explicit prohibition. Thus, to avoid their obligation to submit this dispute to an arbitrator on such a ground, Respondents would ask the Court to write into the Recovery Act a prohibition against arbitration—something Congress did not do, and something the Supreme Court has never done to any federal statute despite being asked to do so many times. *Epic Sys.*, 138 S. Ct. at 1627 ("In many cases over many years, this Court has heard and rejected efforts to conjure conflicts between the Arbitration Act and other federal statutes. In fact, *this Court has rejected every such effort to date* . . . ." (emphasis added)).

## II.     The Claims Against all Petitioners Are Subject to Arbitration.

### A.     The Plain Terms of the Provider Agreement Permit all Petitioners to Submit the Threshold Issue of Arbitrability to the Arbitrator.

The terms of the Arbitration Provision make clear that all Petitioners can compel

---

[10] This is because "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer*, 500 U.S. at 26 (internal quotations omitted). Thus, "[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* (internal quotations omitted).

arbitration against the Nation, the CNHSA, and the Nation's pharmacies.  Arbitration is "a matter of consent," and so parties "may specify *with whom* they choose to arbitrate their disputes," which is what Petitioners did here.  *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010) (emphasis in original).  The Arbitration Provision applies to all of Caremark's affiliates and subsidiaries: "all disputes between Provider and Caremark [*including Caremark's current, future, or former employees, parents, subsidiaries, affiliates, agents and assigns* (collectively referred to in this Arbitration section as 'Caremark')]."  (Harris Decl. Ex. Q (2020 Provider Manual) § 15.09, p. 91 (emphasis added)).  Thus, the plain language of the Arbitration Provision requires the Nation to submit to the arbitrator the issue of the arbitrability of its claims against all Petitioners because they are all Caremark's "parents, subsidiaries, [or] affiliates." *Shields v. Frontier Tech., LLC*, 2011 WL 13070409, at *7 (D. Ariz. Nov. 30, 2011) (finding that agreement defining signatory as "includ[ing] by reference its parent company, subsidiaries and affiliates and their respective directors, officers, employees, and agents" required plaintiff to arbitrate claims against affiliate nonsignatory defendants (internal quotation marks omitted)0.

### B.   The Arbitrator Must Decide the Threshold Issue of Arbitrability as to all Petitioners.

The delegation clause, by its terms, necessarily includes any dispute over who can enforce the agreement.  *See Brennan*, 796 F.3d at 1130; *accord Chickasaw Nation Litig.*, ECF No. 28, at 5 (finding language of delegation clause in Arbitration Provision, including provision relating to enforceability, to be "clear and unmistakable: The parties clearly agreed that the arbitrator(s), not the court, would decide the threshold issue of arbitrability"); *id.*, ECF No. 38, at 4 (explaining that Chickasaw Nation's challenges to "the enforceability of the agreement as a whole" must be deferred to arbitrator in light of delegation clause).  Numerous Courts of Appeals have concluded that a delegation provision like the one here requires the arbitrator to decide whether non-signatories to an arbitration agreement can enforce it.  *See Swiger*, 989 F.3d at 507 ("We . . . find that

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

whether [non-signatory] Rees can enforce the arbitration agreement against Swiger presents a question of arbitrability that Swiger's arbitration agreement delegated to an arbitrator."); *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) (affirming decision permitting non-signatory to compel arbitration because "[w]hether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability" that must be decided by an arbitrator where the agreement "incorporate[d] the AAA Rules"); *Brittania-U Nig., Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017) (affirming district court's decision that whether signatory and two nonsignatories could compel arbitration was delegated to arbitrator by agreement incorporating rules similar to those of AAA).[11]

## C. Arizona Law Permits Non-Parties to Arbitrate in Circumstances Like Those Here.

Even if the Arbitration Provision did not contain this express language, Arizona law permits nonsignatories to compel signatories to arbitrate where, as here, "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Props., Inc. v. Robson*, 294 P.3d 125, 134-35 (Ariz. Ct. App. 2012) (internal quotations omitted). Thus, the *Sun Valley* court permitted a nonsignatory to invoke and enforce an arbitration clause in an agreement against a signatory where "the trier of fact will be required to consider the [agreement] in resolving plaintiffs' claims, and [the nonsignatory's] conduct is intertwined with that of other

---

[11] In *Kramer v. Toyota Motor Corp.*, the Ninth Circuit, applying California law, rejected a non-signatory's attempt to enforce an arbitration provision via a delegation clause. 705 F.3d 1122, 1128 (9th Cir. 2013). But *Kramer* does not apply here. First, unlike here, the arbitration provision there did not reference any party other than the signatories. *Cf. supra* Part II.A. Second, Arizona has permitted non-signatories to enforce arbitration provisions under circumstances like those here. *See infra* Part II.C.

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

defendants who signed the [agreement]." *Id.* at 135; *see also Guglielmo v. LG&M Holdings LLC*, 2019 WL 3253190, at *5 (D. Ariz. July 19, 2019) (applying Arizona law and permitting nonsignatories to enforce arbitration clause in agreement between plaintiff and defendant because they "are owners of Defendant Company and the issues between them and Plaintiffs are the same as between Plaintiffs and Defendant Company.  The people, alleged wrongs, and legal issues are deeply intertwined").  The allegations against and relationships between Caremark and the other Petitioners satisfy this standard.

### D.      Equitable Estoppel Principles Permit all Petitioners to Compel Arbitration.

The Nation's claims against all Petitioners also are subject to arbitration under equitable estoppel principles.  The Arizona Court of Appeals has recognized that "[u]nder well-established common law principles, a nonsignatory may be entitled to enforce, or be bound by, an arbitration provision in a contract executed by others" *Schoneberger v. Oelze*, 96 P.3d 1078, 1081 n.5 (Ariz. Ct. App. 2004), *superseded on unrelated grounds by statute*, Ariz. Rev. Stat. Ann. 14-10205 (Lexis 2012).[12]  Furthermore, California courts, which Arizona courts may look to,[13] have held: "[E]quitable estoppel applies [when the] plaintiff's claims" are "intimately founded in and intertwined with the underlying contract obligations." *Jones v. Jacobson*, 125 Cal. Rptr. 3d 522, 538 (Cal. Ct. App. 2011) (internal quotation marks omitted); *see also Metalclad Corp. v. Ventana Envtl. Org. P'ship*, 1 Cal. Rptr. 3d 328, 334 (Cal Ct. App. 2003) (same).  Accordingly, the Fifth Circuit, analyzing this exact issue, held: "[B]ecause *Schoneberger* suggests that Arizona courts would likely accept an arbitration-by-estoppel theory, we believe that

---

[12] State contract law governs whether a nonsignatory may bind a signatory to the provisions of an arbitration agreement.  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *Benson v. Casa De Capri Enters., LLC*, 980 F.3d 1328, 1330-31 (9th Cir. 2020); *accord Crawford*, 748 F.3d at 261-62.

[13] The Arizona Court of Appeals has said: "[I]f Arizona law has not addressed an issue, we look approvingly to the laws of California, especially when interpreting a similar or identical statute" so long as the reasoning of the California case law is sound.  *Moore v. Browning*, 50 P.3d 852, 859 (Ariz. Ct. App. 2002) (internal quotation marks omitted).

Arizona law, as informed by apposite and well reasoned California law, would permit the non-signatory Defendants to compel the signatory Plaintiffs to arbitrate their claims."[14] *Crawford*, 748 F.3d at 261.

Similarly, in *Mundi v. Union Security Life Insurance Co.*, the Ninth Circuit reasoned that a nonsignatory to an arbitration agreement could compel arbitration against a signatory party where (1) "'the subject matter of the dispute [is] intertwined with the contract providing for arbitration,'" and (2) the "'relationship among the parties . . . justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.'"  555 F.3d 1042, 1046 (9th Cir. 2009) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359-62 (2d Cir. 2008)).

Petitioners meet both standards,[15] and thus can compel the Nation, CNHSA, and the Nation's pharmacies to submit to an arbitrator the claims in the Complaint.

### 1.    The Nation's Claims Are Intertwined With the Provider Agreement.

The Nation's claims against all Petitioners are "founded in" and "intertwined with" the obligations imposed by the Provider Agreement—i.e., the respective obligations and rights of the parties related to the submission, processing, and payment of claims submitted by the Nation's pharmacies.

---

[14] The Fifth Circuit further explained: "the plaintiff to be estopped need not rely exclusively on the terms of the agreement containing an arbitration clause." *Crawford*, 748 F.3d at 260 (citing *Boucher v. Alliance Title Co.*, 25 Cal. Rptr. 3d 440, 446 (Cal. Ct. App. 2005)).  Rather, "'[t]he focus is on the nature of the claims asserted by the plaintiff against the nonsignatory defendant.'" *Id.* (quoting *Boucher*, 25 Cal. Rptr. 3d at 447).

[15] The *Mundi* standard is more demanding than the one under California law, and under *Arthur Andersen*, this Court should apply state, not federal, law to the question of estoppel.  However, even under *Mundi*, the Nation is estopped from avoiding arbitration against Petitioners.  *See Gable*, 2012 U.S. Dist. LEXIS 191047, at *27 (acknowledging that the *Mundi* test is stricter than state law but concluding that under either standard the signatory was estopped from avoiding arbitration against nonsignatories under a nearly identical Arbitration Provision and similar defendants).

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

In the Complaint, the Nation contends that *all* "Defendants knowingly, intentionally, and unjustifiably refuse to pay to the Nation the funds it is entitled to recoup for pharmaceutical benefits, medical devices, and other products and services provided to Members with Defendant-administered and/or -issued coverage." (Petition Ex. 1 (Compl.) ¶ 10; *see also id.* ¶¶ 76-77 (describing pharmacy claim submission process)). More broadly, the Nation's claims against all Petitioners turn on alleged violations of the Recovery Act based on Petitioners' conduct related to the Nations' pharmacies' claims, meaning the Complaint's claims necessarily rely on the terms of the Provider Agreement. *See supra*, Section I.C.

### 2. The Nation Alleges a Relationship Among Petitioners That Supports Estoppel.

The Nation alleges interdependent and concerted action among Caremark and the other Petitioners, and thus a relationship among them that supports estoppel.

First, as noted above, the Complaint makes broad, sweeping allegations against all Petitioners collectively. This alone is sufficient to show that the claims are intertwined. *See Jureczki v. Banc One Tex., N.A.*, 252 F. Supp. 2d 368, 378 (S.D. Tex. 2003) (concluding plaintiff estopped from avoiding arbitration with nonsignatories where "neither the factual nor the legal allegations asserted in plaintiffs' complaint distinguish between the individual defendants"), *aff'd*, 75 F. App'x 272 (5th Cir. Tex. 2003). Second, the Nation explicitly alleges that various Petitioners are agents or alter egos of each other: "Defendant CaremarkPCS Health, L.L.C. and Caremark L.L.C. are agents and/or alter egos of Defendant Caremark Rx, L.L.C., and Defendant Caremark Rx, L.L.C. is an agent and/or alter ego of CVS Health." (Petition Ex. 1 (Compl.) ¶ 17.) Third, the Nation alleges that Aetna, Inc "is responsible for denying the Nation's claims under 25 U.S.C. § 1621e by means of its parents Caremark and CVS Health's PBM." (*Id.* ¶ 27.) And fourth, the Nation specifically alleges interconnected conduct, in that: (i) Caremark denied the pharmacies' claims in Caremark's capacity as PBM "on behalf of the respective health benefits plans [it] managed (predominantly, Aetna . . .)," and (ii)

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

28

"Aetna, Inc. is responsible for denying the Nation's claims under 25 U.S.C. § 1621e by means of its parents CVS Caremark and CVS Health's PBM." (*Id.* ¶¶ 8, 27.)

The Nation therefore has alleged a relationship among Caremark and the other Petitioners that supports a finding of estoppel.[16]

## III.  The Nation Cannot Avoid Submitting the Arbitrability of This Dispute to the Arbitrator by Claiming Sovereign Immunity.

### 1.  The Nation Cannot Invoke Sovereign Immunity Before This Court.

The Nation's sovereign immunity is not implicated here where the Nation is, and will be, the only party asserting claims in this dispute, and merely is being directed to bring those claims in a particular forum. The Nation faces no claims by Petitioners in any forum. Sovereign immunity "is an immunity *from suit*" that "may be viewed as an affirmative defense." *Pistor v. Garcia*, 791 F.3d 1104, 1110-11 (9th Cir. 2015) (citation omitted, emphasis added). Sovereign immunity protects Tribal Nations from being haled into court or arbitration without their consent to face the possibility of judgments against them. But sovereign immunity does not give sovereigns special rights when they opt to pursue claims against others. Petitioners are aware of no binding authority to the contrary. Moreover, as the Court in the Chickasaw Nation Litigation aptly explained, under the circumstances here, the Nation cannot show "how submitting the threshold issue of arbitrability to the arbitrator, all while invoking sovereign immunity and maintaining their position that they are not bound by the agreement, will waive the Nation's immunity." *Chickasaw Nation Litig.*, ECF No. 38, at 4.

Further, in light of the delegation clause and under the circumstances here, the arbitrator properly can and should resolve any sovereign immunity argument. Any such

---

[16] Because all Petitioners can enforce the Arbitration Provision, they also have standing to bring this Petition. *Gable*, 2012 U.S. Dist. LEXIS 191047, at *36 ("Having found that the arbitration clauses are triggered as to the Caremark entities, their injury in fact is clear: Respondents have failed to arbitrate as contractually agreed upon, and thus the Caremark entities are 'aggrieved' parties within the meaning of section four of the FAA.").

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

argument would necessarily be "inextricably bound up" with the threshold issue of arbitrability; thus, the arbitrator must decide all those issues "in the first instance." *Elem Indian Colony of Pomo Indians v. Pac. Dev. Partners X LLC*, 2009 WL 10692978, at *3 (N.D. Cal. June 23, 2009); *see Henry Schein*, 139 S. Ct. at 529.

### 2. The Arbitration Provision in all Provider Manuals Establishes a Waiver.

Even if the question of sovereign immunity were before the Court, the Nation clearly and unequivocally waived sovereign immunity for this dispute when it entered into the Provider Agreements, and thereby accepted the incorporated Provider Manual, and continued to submit claims to Caremark after receiving each subsequent version of the Provider Manual.   Under Supreme Court precedent, the Arbitration Provision constitutes a clear and unequivocal waiver of immunity.

Both the current 2020 Provider Manual—which is in effect and applicable to the Nations' pharmacies, and thus contains the Arbitration Provision that governs this dispute—and all prior versions since 2004 contains an Arbitration Provision.  (*See* Harris Decl. Exs. I-J, L-Q).  Each Arbitration Provision in each version of the Provider Manual meets the requirements for a waiver of sovereign immunity under *C & L Enterprises, Inc. v. Citizen Band of Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 418-19 (2001) (concluding that the incorporation of AAA rules, providing that "'the arbitration award may be entered in any federal or state court having jurisdiction,'" into the agreement represented a clear waiver of immunity).  *Accord Oglala Sioux Tribe v. C & W Enters.*, 542 F.3d 224, 231 (8th Cir. 2008); *Val/Del, Inc. v. Super. Ct.*, 703 P.2d 502, 509 (Ariz. Ct. App. 1985)  The Ninth Circuit has interpreted *C & L* as holding that a clear waiver of tribal sovereign immunity exists where there is: "(1) a clause stating that all contractual disputes should be resolved according to American Arbitration Association Rules and providing for enforcement of the arbitrator's award in accordance with applicable law in any court having jurisdiction thereof; and (2) a choice-of-law clause consenting to the law of the project location . . . ."  *Demontiney v. U.S. ex rel. Dep't of Interior, Bureau of*

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

*Indian Affairs*, 255 F.3d 801, 813 n.5 (9th Cir. 2001) (citations, alteration, and internal quotation marks omitted).

These requirements are satisfied here, as each Arbitration Provision in all versions of the Provider Manual: (1) clearly requires that all disputes be settled in arbitration; (2) incorporates the AAA Rules, which in turn provide: "Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof," AAA Commercial Rules, R-52(c);[17] and (3) provides that "judgment upon such award may be entered in any court having jurisdiction thereof," and requires the arbitration to "be conducted in Scottsdale, Arizona." (*See* Harris Decl. Exs. I-J, L-Q).

The Arbitration Provision is indistinguishable from the one before the Supreme Court in *C & L*, as it clearly and unequivocally provides that disputes will be settled by binding arbitration in a specific jurisdiction under specific law, making it a valid waiver of the Nation's sovereign immunity for this dispute. *See C & L Enters.*, 532 U.S. at 414-16; *Benton v. Clarity Servs.*, 2018 WL 1626676, at *2 (N.D. Cal. Apr. 4, 2018) (finding waiver where agreement provided party "may 'in connection with the enforcement' of said agreement, 'institute formal action, either by arbitration or commencing an action in a state court . . . or United States District Court'") (citation omitted)).

## **CONCLUSION**

For these reasons, Petitioners respectfully request that the Court grant the Petition to Compel Arbitration against all Respondents, and issue an Order, pursuant to Section 4 of the FAA, 9 U.S.C. § 4, compelling Respondents to submit the dispute with the Petitioners relating to the claims in the Complaint to the arbitrator to resolve all questions of arbitrability in the first instance.

---

[17] *Available at* https://adr.org/sites/default/files/Commercial%20Rules.pdf. Petitioners have reviewed all versions of the AAA Commercial Rules going back to January 1, 2003, as archived on the AAA's website. *See* AAA, Rules, Forms Fees, https://adr.org/ArchiveRules. Each version of these rules contains identical language.

Dated this 13th day of September, 2021.

Respectfully submitted,

**CAREMARK, L.L.C., CAREMARK PHC, L.L.C.; CAREMARKPCS HEALTH, L.L.C.; CAREMARK RX, L.L.C.; AETNA, INC.; AND AETNA HEALTH, INC.**

By: /s/ Jon T. Neumann

Respectfully submitted,

**GREENBURG TRAURIG, LLP**
Jon T. Neumann
2375 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
(602) 445-8411
neumannj@gtlaw.com

**THOMPSON HINE LLP**
Peter J. Kocoras
(*pro hac vice* application forthcoming)
20 North Clark Street, Suite 3200
Chicago, Illinois 60602-5093
(312) 998-4241
Peter.Kocoras@ThompsonHine.com

Brian K. Steinwascher
(*pro hac vice* application forthcoming)
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
(212) 908-3916
Brian.Steinwascher@ThompsonHine.com

*Attorneys for Petitioners Caremark PHC, LLC, CaremarkPCS Health, LLC, Caremark, LLC, Caremark Rx, LLC, Aetna, Inc., and Aetna Health, Inc.*