Jon T. Neumann, SBN 018858
neumannj@gtlaw.com
GREENBERG TRAURIG, LLP
2375 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone:  (602) 445-8000
Fax:  (602) 445-8100

Peter Kocoras (*pro hac vice*)
Peter.Kocoras@ThompsonHine.com
THOMPSON HINE LLP
20 North Clark Street, Suite 3200
Chicago, Illinois  60602-5093
Telephone: (312) 998-4241
Fax: (312) 998-4245

Brian Steinwascher (*pro hac vice*)
Brian.Steinwascher@ThompsonHine.com
THOMPSON HINE LLP
335 Madison Avenue, 12th Floor
New York, New York  10017-4611
Telephone: (212) 908-3916
Fax: (212) 344-6101

*Attorneys for Petitioners Caremark, LLC;*
*Caremark PHC, LLC; CaremarkPCS Health, LLC;*
*Caremark Rx, LLC; Aetna, Inc.; and Aetna Health, Inc.*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Caremark, LLC; Caremark PHC, LLC; CaremarkPCS Health, LLC; Caremark Rx, LLC; Aetna, Inc.; and Aetna Health, Inc.,<br><br>Petitioners,<br><br>v.<br><br>The Choctaw Nation; the Choctaw Nation Health Services Authority; the Choctaw Health Care, Talihina, OK; the Choctaw Nation Health Clinic-Rubin White, Poteau; the Choctaw Nation Health Clinic-McAlester; the Choctaw Nation Health Clinic-Idabel; the Choctaw Nation Health Clinic-Stigler; the Choctaw Nation Health Clinic-Hugo; the Choctaw Nation Health Clinic-Atoka; the Choctaw Nation Heath Care Center Durant Pharmacy; and the Choctaw Nation Online Pharmacy Refill Center,<br><br>Respondents. | Civil Action No. 2:21-cv-01554-SMB<br><br>**PETITIONERS' REPLY MEMORANDUM OF LAW IN SUPPORT OF PETITION TO COMPEL ARBITRATION** |

61725558

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 2

I.    The First-to-File Doctrine Does Not Apply And Provides no Basis on Which to Evade Arbitration. ............................................................. 2

    A.    The First-to-File Doctrine is Inapplicable by Its Own Terms. .................................................................................... 2

    B.    It Would be Inequitable to Apply The First-to-File Doctrine. ....... 2

II.    The Nation's Sovereign Immunity is Not Implicated. ............................. 4

III.    Respondents Are Challenging Enforceability, Not Contract Formation. ........................................................................................... 4

IV.    Respondents do Not Challenge The Validity of The Delegation Clause, Which The Court Must Enforce. .................................................. 7

V.    The Arbitration Provision Constitutes a Clear And Unequivocal Waiver of Sovereign Immunity. ......................................................... 8

VI.    All Respondent Pharmacies Entered Into a Valid And Enforceable Agreement With Caremark. .............................................................. 9

VII.    The Arbitration Provision is Not Unconscionable. ................................ 11

VIII.    The Court Should Reject Respondents' Remaining Challenges. ............ 12

    A.    Respondents Agreed to a Delegation Clause When They Signed The Provider Agreement. .................................................. 12

    B.    The Delegation Clause Applies to This Dispute. ......................... 13

    C.    The Provider Agreement Incorporates The Provider Manual. .................................................................................... 14

    D.    All Petitioners Can Enforce The Arbitration Provision. .............. 15

    E.    Respondents' Signature And Initialization Arguments Are Meritless. ............................................................................... 16

    F.    The Arbitration Provision is Valid Regardless of Who Drafted it. ............................................................................... 16

    G.    Respondents Received All Provider Manuals. ............................. 17

IX.    Under Brice, The Arbitrability of The Nation's Recovery Act Claims Must be Decided by The Arbitrator Pursuant to The Delegation Clause. .................................................................................... 18

X.    Neither The Statute Nor Any Case Precludes Arbitration of Recovery Act Claims. .......................................................................... 20

61725558

XI.    Arbitration Does Not Prevent Effective Vindication of The
       Nation's Recovery Act Claims...........................................................22

CONCLUSION........................................................................................................26

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

61725558

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allison Steel Mfg. Co. v. Super. Court*,
 523 P.2d 803 (Ariz. Ct. App. 1974) ........................................................ 15

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
 946 F.2d 622 (9th Cir. 1991)..................................................................... 2

*Am. Express Co. v. Italian Colors Rest.*,
 570 U.S. 228 (2013) ................................................................................ 21

*Ansari v. Qwest Commc'ns Corp.*,
 414 F.3d 1214 (10th Cir. 2005)................................................................. 3

*Badinelli v. The Tuxedo Club*,
 183 F. Supp. 3d 450 (S.D.N.Y. 2016)..................................................... 19

*Belnap v. Iasis Healthcare*,
 844 F.3d 1272 (10th Cir. 2017)................................................................. 8

*Bowie's Priority Care Pharm., L.L.C. v. CaremarkPCS, L.L.C.*,
 2018 WL 1964596 (N.D. Ala. Apr. 26, 2018) ........................................ 14

*Brennan v. Opus Bank*,
 796 F.3d 1125 (9th Cir. 2015).................................................................. 13

*Brice v. Plain Green, LLC*,
 13 F.4th 823 (9th Cir. 2021) .................................................... 7, 18, 19, 20

*Buckeye Check Cashing, Inc. v. Cardegna*,
 546 U.S. 440 (2006) ................................................................................... 6

*Burton's Pharm., Inc. v. CVS Caremark Corp.*,
 2015 WL 5430354 (M.D.N.C. Sept. 15, 2015).................................. 23, 24

*C & L Enters., Inc. v. Citizen Band of Potawatomi Indian Tribe of Okla.*,
 532 U.S. 411 (2001) .......................................................................... 6, 8, 16

*Caremark LLC v. Chickasaw Nation*,
 No. CV-21-00574-PHX-SPL (D. Ariz. 2021) ................................... *passim*

*Clark v. Renaissance W., LLC*,
 307 P.3d 77 (Ariz. Ct. App. 2013) .......................................................... 23

61725558

*CompuCredit Corp. v. Greenwood*,
   565 U.S. 95 (2012) ................................................................................ 20, 21

*Cosentino v. Pechanga Band of Luiseno Mission Indians*,
   637 F. App'x 381 (9th Cir. 2016) ................................................................ 6

*Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*,
   748 F.3d 249 (5th Cir. 2014)...................................................................... 22

*Demontiney v. U.S. ex rel. Dep't of Interior, Bureau of Indian Affairs*,
   255 F.3d 801 (9th Cir. 2001)........................................................................ 8

*Edwards v. Vemma Nutrition*,
   2018 WL 637382 (D. Ariz. Jan. 31, 2018) ............................................... 26

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) .......................................................................... 20, 21

*Green Tree Fin. Corp. v. Randolph*,
   531 U.S. 79 (2000) ..................................................................................... 22

*Harrington v. Pulte Home Corp.*,
   211 Ariz. 241 (Ariz. Ct. App. 2005) .......................................................... 22

*Hopkinton Drug, Inc. v. CaremarkPCS, L.L.C.*,
   77 F. Supp. 3d 237 (D. Mass. 2015) .................................................... 11, 24

*Ingle v. Cir. City Stores, Inc.*,
   328 F.3d 1165 (9th Cir. 2003)..................................................................... 23

*Lackie Drug Store Inc. v. Arkansas CVS Pharm., LLC*,
   2021 WL 5567360 (E.D. Ark. Nov. 29, 2021) ............................... 10, 14, 17

*Laver v. Credit Suisse Secs. (USA), LLC*,
   2018 WL 3068109 (N.D. Cal. June 21, 2018),
   *aff'd*, 976 F.3d 841 (9th Cir. 2020) ............................................................. 3

*Longnecker v. Am. Express Co.*,
   23 F. Supp. 3d 1099 (D. Ariz. 2014)........................................................... 25

*MEI Tech., Inc. v. Detector Networks Int'l, LLC*,
   2009 WL 10665141 (D.N.M. July 6, 2009)................................................... 2

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ....................................................................................... 21

*New Prime Inc. v. Oliveira*,
   139 S. Ct. 532 (2019) ................................................................................. 18

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

v

61725558

*Office of Personnel Management v. Richmond*,
    496 U.S. 414 (1990) ............................................................................ 15

*Paduano v. Express Scripts, Inc.*,
    55 F. Supp. 3d 400 (E.D.N.Y. 2014) .......................................... 11, 24, 26

*Platt v. OptumRx*,
    Case No. RG20074100 (Cal. Super. Ct., June 22, 2021).......................... 12

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ........................................................................ 7, 11

*Robert D. Mabe, Inc. v. Optum Rx*,
    2021 WL 2184764 (M.D. Pa. May 28, 2021) ...................................... 12

*Shearson/Am. Express v. McMahon*,
    482 U.S. 220 (1987) ................................................................... 20, 22

*Shivkov v. Artex Risk Sols., Inc.*,
    974 F.3d 1051 (9th Cir. 2020),
    *cert. denied*, 141 S. Ct. 2845 (June 28, 2021) ..................................... 21

*Star Tickets v. Chumash Casino Resort*,
    2015 WL 6438110 (Mich. Ct. App. Oct. 22, 2015)............................ 16, 17

*Stillaguamish Tribe of Indians v. Pilchuk Group II, L.L.C.*,
    2011 WL 400108 (W.D. Wash. Sept. 7, 2011) ....................................... 6

*Stutler v. T.K. Constructors Inc.*,
    448 F.3d 343 (6th Cir. 2006) .......................................................... 25

*Uptown Drug Co. v. CVS Caremark Corp.*,
    962 F. Supp. 2d 1172 (N.D. Cal. 2013) ............................................... 11

*Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*,
    790 F.3d 1000 (10th Cir. 2015) ........................................................ 6

*W. Va. CVS Pharm. LLC v. McDowell Pharm., Inc.*,
    238 W. Va. 465 (2017)............................................................... 11, 14

**Statutes**

Federal Arbitration Act, 9 U.S § 1 *et seq*. ......................................... 20, 22

Federal Arbitration Act, 9 U.S.C § 4 .................................................. 3, 26

Fair Labor Standards Act, 29 U.S.C. § 203 ............................................ 25

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

61725558

Recovery Act, 25 U.S.C. § 1621e............................................................................ *passim*

**Other Authorities**

AAA, Rules, Forms Fees, https://adr.org/ArchiveRules ................................................. 9

AAA Commercial Rules, R-52(c),
    *Available at* https://adr.org/sites/default/files/Commercial%20Rules.pdf ................. 9

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA  85016
(602) 445-8000

vii

### INTRODUCTION[1]

The delegation clause in the Arbitration Provision is valid and enforceable and applies to the parties' dispute. Respondents' Opposition fails to provide any legal basis for why the Court should not enforce this delegation clause. The Court therefore should grant the Petition and allow the arbitrator to determine the threshold question of the arbitrability of Respondents' claims.

Respondents wish to avoid this result by characterizing their arguments as relating to "contract formation." But Respondents are not challenging that they entered into and are bound by the Provider Agreement, and they agree that the Provider Manual, and its Arbitration Provision, are part of that agreement. Notwithstanding, using this self-serving characterization, Respondents contend that the Arbitration Provision in the Provider Agreements cannot be *enforced* against them. That is a question for the arbitrator under the delegation clause.

And Respondents' sovereign immunity is no bar to the enforceability of the delegation clause. Putting aside that Respondents' sovereign immunity is not implicated here at all, the arbitrator must decide any sovereign immunity challenge in the first instance. Moreover, Respondents waived their sovereign immunity by entering into the Provider Agreement.

Judge Logan came to the same conclusion when confronted with an identical Arbitration Provision and delegation clause in substantively similar Provider Agreements involving another Indian tribe, the Chickasaw Nation: "The parties clearly agreed that the arbitrator(s), not the court, would decide the threshold issue of arbitrability." *Caremark LLC v. Chickasaw Nation*, No. CV-21-00574-PHX-SPL, Order Compelling Arbitration at 5 (D. Ariz. July 2, 2021) (the "Chickasaw Nation Litigation") (ECF No. 28). That reasoning applies here with equal force. In short, there is no dispute that:

---

[1] Capitalized terms not otherwise defined herein have the same definition as set forth in Petitioners' opening Memorandum (ECF No. 21).

1

(1) there is a contract between the parties; and (2) the Arbitration Provision and delegation clause are part of the contract. Respondents' numerous other arguments are unsupported by the facts and precedent.

## ARGUMENT

**I.     The First-to-File Doctrine Does Not Apply And Provides no Basis on Which to Evade Arbitration.**

### A.     The First-to-File Doctrine is Inapplicable by Its Own Terms.

Respondents invoke the first-to-file doctrine on the basis that the Chickasaw Nation Litigation involves "similar" parties. Respondents cite no authority in support of their position. As Petitioners explained in their opposition to Respondents' pending motion to stay, the first-to-file doctrine cannot apply where, as here, the two cases are being prosecuted by two entirely unrelated parties. *See* Opp. to Mot. to Stay at 13-15 (ECF No. 22).

### B.     It Would be Inequitable to Apply The First-to-File Doctrine.

Applying the first-to-file doctrine here to dismiss the Petition would be inequitable. The Ninth Circuit has emphasized that "[t]he most basic aspect of the first-to-file rule is that it is discretionary" and that courts can "dispense with the first-filed principle for reasons of equity." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991).

First, Respondents would be able to circumvent the Arbitration Provision by avoiding its requirement that arbitration be conducted in Arizona. *See MEI Tech., Inc. v. Detector Networks Int'l, LLC*, 2009 WL 10665141, at *4 (D.N.M. July 6, 2009) ("[I]f the rule were that a party could circumvent a forum selection clause [in an arbitration agreement] simply by filing a lawsuit in a different forum and then asserting that the first-filed doctrine trumped, forum selection clauses would be rendered meaningless."). It would penalize Petitioners as the "second filers" for abiding by the Arbitration Provision, with its Arizona arbitral mandate, when the Nation did not. Petitioners made a timely

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

2

61725558

arbitration demand, which the Nation rejected, leading to their filing of the Petition here, as necessary under *Ansari*. *See Laver v. Credit Suisse Secs. (USA), LLC*, 2018 WL 3068109, at \*6 (N.D. Cal. June 21, 2018) (rejecting applicability of first-filed doctrine because it would be "inequitable to penalize . . . second filer[] for abiding by the arbitration agreement when . . . the first filer[] disregarded its contractual obligation to arbitrate" (quotation marks omitted)), *aff'd*, 976 F.3d 841 (9th Cir. 2020).

Second, it would be inequitable because it would place both the Oklahoma court and Petitioners in untenable positions. As stated in Petitioners' opening brief, settled Tenth Circuit law mandates that the Oklahoma court cannot compel the parties to arbitrate under these circumstances. *See* Opening Memo. at 21-22 (ECF No. 21) (quoting *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1220 (10th Cir. 2005) (district court cannot compel arbitration in a different district, or in its own if another is specified in parties' agreement)). Given the Arizona arbitral forum specified in the Arbitration Provision, the Oklahoma court cannot compel arbitration in that venue, and so applying the first-to-file doctrine would nullify the bargained-for Arbitration Provision and functionally nullify *Ansari*.

This was the basis on which Judge Logan squarely refused to apply the first-to-file doctrine in the Chickasaw Nation Litigation. *See Chickasaw Nation Litig.*, Order Compelling Arbitration at 3-4 (ECF No. 28). There, the Chickasaw Nation argued that its previously-filed Complaint against Caremark and others in the Oklahoma court was the "first-filed" case, triggering the first-to-file doctrine and precluding the Arizona court from proceeding. Judge Logan found that under circumstances virtually identical to those here, it would be inequitable to apply the first-to-file doctrine because under Tenth Circuit law only a district court in the agreed arbitral forum has authority to compel arbitration under Section 4 of the FAA. *Id.* at 3 (citing *Ansari*, 414 F.3d at 1220-21). Thus, Judge Logan held:

> [I]f this Court were to apply the first-to-file rule and defer to the Oklahoma court on the arbitration issue, and the Oklahoma court were to find that the

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

3

claims in this case were subject to arbitration, the Oklahoma court could not enforce the agreement and compel arbitration.  This Court therefore declines to apply the first-to-file rule and defer the arbitrability issue to the Oklahoma court in this case.

*Id.* at 4.  The same result should apply here.

## II.  The Nation's Sovereign Immunity is Not Implicated.

The Court need not address Respondents' sovereign immunity arguments.  As set forth in Petitioners' opening Memorandum (ECF No. 21 at 29), the Nation's sovereign immunity is not implicated by this application because Petitioners are not asserting any claim against the Nation.  Instead, the Nation is the plaintiff seeking millions of dollars in damages against Petitioners; the Nation is voluntarily pressing claims with no risk of money damages or an injunction against it if it loses.  Requiring the Nation to bring its claims in arbitration does not convert the Nation into a de facto defendant; the Nation remains the master of its Complaint no matter the forum.  Respondents cite no case in which a tribe has invoked sovereign immunity as a plaintiff.

In any event, as Petitioners argued in their opening Memorandum, and which Respondents do not rebut, the arbitrator properly should resolve any sovereign immunity argument in light of the delegation clause.  Opening Memo. at 29-30 (ECF No. 21);[2] *see infra* § III.

## III.  Respondents Are Challenging Enforceability, Not Contract Formation.

The Court should reject Respondents' attempt to reframe their arguments as a challenge to "[w]hether the parties *formed* an arbitration agreement in the first place." Opp. Br. at 25 (ECF No. 25) (emphasis in original).   Respondents' self-serving

---

[2] Rejecting the argument that requiring the arbitrator to decide threshold issues of arbitrability will impact the Chickasaw Nation's sovereign immunity, Judge Logan explained: "Respondents have not shown how submitting the threshold issue of arbitrability to the arbitrator, all while invoking sovereign immunity and maintaining their position that they are not bound by the agreement, will waive [their] immunity." *Chickasaw Nation Litig.*, Order Denying Stay at 4 (ECF No. 38).

4

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

characterization does not change the fact that their arguments concern whether the Arbitration Provision is *enforceable* against them.

Respondents do not challenge the fact that the contract is valid. Nor could Respondents credibly do so, given that the contract has been in place for all pharmacies for at least 12 years, and Respondents have submitted claims in excess of $90.5 million pursuant to that contract just from January 2014 to July 2021. Declaration of Stephanie Harris in support of Petition ("Harris Decl."), ¶ 42 (ECF No. 5-1). Respondents also do not contend that its signatories to the Provider Agreement, Reece W. Sherrill, CEO of Choctaw Nation Health Care, and Todd Hallmark, COO of Choctaw Nation Health Services Authority, were unauthorized to sign any contract or to bind the Nation to the contract. *Id.*, Exs. A-G (ECF No. 9) (copies of signed Provider Agreement).

Respondents challenge the delegation clause and Arbitration Provision on sovereign immunity grounds. But Respondents' argument that they did not clearly and unequivocally waive sovereign immunity challenges the enforceability of the agreement. According to Respondents, the Arbitration Provision cannot be *enforced* against them because they are a sovereign tribe. As the Arizona court in the Chickasaw Nation Litigation concluded, that challenge is for the arbitrator to decide under the delegation clause. *See Chickasaw Nation Litig.*, Order Compelling Arbitration at 4 (ECF No. 28); *id.*, Order Denying Stay at 3 (ECF No. 38) ("[A]mple caselaw exists establishing that an arbitrator must decide the threshold issue of arbitrability where the parties clearly so agreed.").

Respondents' "contract formation" arguments conflate the question of whether a valid arbitration agreement exists—it does, and Respondents concede one does by failing to challenge the Provider Agreement or Provider Manual itself—with the question of whether Respondents clearly and unequivocally waived sovereign immunity. As a result, Respondents misapprehend the relevant standard: a defense of sovereign immunity is a question about whether the tribe can be forced to arbitrate under an otherwise valid

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

5

arbitration provision; it is not a defense to contract formation.[3]   A tribe's waiver of immunity must be "clear" from the language of the arbitration agreement.  *C & L Enters., Inc. v. Citizen Band of Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 418 (2001); *accord Cosentino v. Pechanga Band of Luiseno Mission Indians*, 637 F. App'x 381, 382 (9th Cir. 2016), cited in Opp. Br. at 17 n.18 (ECF No. 25).  The agreement need not expressly waive sovereign immunity to satisfy this standard; indeed, "[n]o case has ever held that" a waiver must, "to be deemed explicit," use the words "'sovereign immunity.'"  *C & L*, 532 U.S. at 420 (internal quotation marks and citation omitted).  To the contrary, when tribes enter into an agreement that clearly provides for arbitration, that language is clear enough to waive immunity.  *See id.* at 418.  By contrast, ambiguous language in an agreement—like provisions that seem to waive immunity but include language proclaiming "No Waiver of Sovereignty or Jurisdiction Intended"—is insufficiently clear to waive immunity.  *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1009 (10th Cir. 2015), cited in Opp. Br. at 17 (ECF No. 25).[4]   But it does not follow that the tribe must assent to an agreement whose terms clearly waive immunity in some particularly express manner.  *See infra* § V.

---

[3] Respondents argue that they can nullify the Arbitration Provision while leaving the rest of the contract intact, relying on the Supreme Court's decision in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006), cited in Opp. Br. at 39 (ECF No. 25).  But *Buckeye*, if anything, stands for the opposite proposition.  In *Buckeye*, the Supreme Court held that an arbitration provision was severable from the contract as a whole such that a challenge to the contract being "illegal" and "void ab initio" did not prevent a court from enforcing the arbitration clause.  *See id.* at 443.  Here, Respondents are advancing the reverse—that the contract as a whole can be enforced except for the Arbitration Provision.  Respondents offer no authority for this novel position.

[4] *Stillaguamish* likewise is about whether an arbitration agreement could be enforced against a tribe where it was unclear whether the tribe waived immunity.  *Stillaguamish Tribe of Indians v. Pilchuk Group II, L.L.C.*, 2011 WL 400108, at *7 (W.D. Wash. Sept. 7, 2011) ("The question . . . is whether the Tribe waived its sovereign immunity for disputes arising out of the RV park project."), cited in Opp. Br. at 17 (ECF No. 25).

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

6

61725558

## IV.    Respondents do Not Challenge The Validity of The Delegation Clause, Which The Court Must Enforce.

Respondents repeatedly assert that they are challenging the delegation clause, but they make no specific arguments as to why the delegation clause itself is unenforceable. Respondents do not argue that the delegation clause ineffectively delegates the threshold question of arbitrability to an arbitrator, nor do they advance any other argument that the delegation clause itself is invalid. *See* Opp. Br. at 26-29 (ECF No. 25) (contending only that delegation clause does not require submission of dispute to arbitrator, not that clause itself is invalid). For good reason: the delegation clause is identical to the one the Supreme Court upheld in *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010) (delegation clause providing: "'The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.'").

Respondents are instead challenging the enforceability of the Arbitration Provision as a whole based on sovereign immunity—i.e., whether the Arbitration Provision is legally binding on them. The Supreme Court has held that if there is a valid delegation clause and a party challenges the enforceability of the agreement as a whole, the challenge is for the arbitrator. *Rent-A-Ctr.*, 561 U.S. at 70. In *Rent-A-Center*, the Supreme Court stated that a challenge as to whether an agreement is "legally binding," as opposed to whether it was agreed to, is an issue that can be delegated to the arbitrator. 561 U.S. at 69-70 nn.1 & 2.

The same reasoning applies here: because Respondents are not challenging the validity of the delegation clause itself, the arbitrator must decide the threshold issues of arbitrability, including Respondents' contention that the Arbitration Provision is not enforceable. *See id.* at 69-70; *Brice v. Plain Green, LLC*, 13 F.4th 823, 827-28 (9th Cir. 2021) (holding that delegation clauses require courts to delegate all enforceability challenges to arbitrator unless party specifically challenges enforceability of delegation

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

7

clause); *accord Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1292-93 (10th Cir. 2017).

## V.      The Arbitration Provision Constitutes a Clear And Unequivocal Waiver of Sovereign Immunity.

Petitioners agree that a tribal waiver of sovereign immunity "'must be unequivocally expressed.'" Opp. Br. at 13 (ECF No. 25) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). But under controlling Supreme Court precedent, the Arbitration Provision in the Provider Manuals meets this requirement, and each of the Respondent pharmacies signed a Provider Agreement expressly incorporating the Provider Manual. Respondents do not plausibly deny that the Respondent pharmacies entered into the Provider Agreements—to the extent they attempt to deny this, the record makes clear they did—and Respondents acknowledge that the Provider Agreements incorporate the Provider Manual. Opp. Br. at 19 (ECF No. 25).

The Supreme Court has held that a tribe waives sovereign immunity where, as here, it enters into a contract with a clause requiring arbitration of all contract-related disputes and incorporating the rules of the American Arbitration Association, including the rule that "the arbitration award may be entered in any federal or state court having jurisdiction," into the agreement. *C & L*, 532 U.S. at 418-19 (citation and internal quotation marks omitted). Similarly, the Ninth Circuit has interpreted *C & L Enterprises* as holding that a clear and unequivocal waiver of tribal sovereign immunity exists where there is: "(1) a clause stating that all contractual disputes should be resolved according to American Arbitration Association Rules and providing for enforcement of the arbitrator's award in accordance with applicable law in any court having jurisdiction thereof; and (2) a choice-of-law clause [provision]." *Demontiney v. U.S. ex rel. Dep't of Interior, Bureau of Indian Affairs*, 255 F.3d 801, 813 n.5 (9th Cir. 2001) (cleaned up).

Each Provider Manual the Respondent pharmacies received, including the operative 2020 version, meets the requirements for a waiver of sovereign immunity under *C & L Enterprises*. Specifically, each Arbitration Provision in the Provider Manuals: (1) clearly requires that all disputes be settled in arbitration; (2) incorporates the AAA Rules,

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

8

which in turn provide: "Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof," AAA Commercial Rules, R-52(c);[5] and (3) provides that "judgment upon such award may be entered in any court having jurisdiction thereof," and requires the arbitration to "be conducted in Scottsdale, Arizona." *See* Harris Decl., Exs. I (at 48), J (at 39), L (at 43), M (at 50), N (at 45), O (at 44), P (at 51) and Q (§ 15.09) (ECF No. 9).

## VI.   All Respondent Pharmacies Entered Into a Valid And Enforceable Agreement With Caremark.

Respondents' assertion that only two of the pharmacies named in this action were signatories to a Provider Agreement (Opp. Br. at 22 (ECF No. 25)) is demonstrably inaccurate.   In support of their Petition, Petitioners submitted Provider Agreements signed by all seven named pharmacies. *See* Harris Decl. ¶¶ 19-25 and Exs. A-G (ECF Nos. 5-1, 9).  Respondents also incorrectly assert that Petitioners identified no agreements signed by the Choctaw Nation Online Pharmacy Refill Center or the Choctaw Nation Health Center Durant Pharmacy.  Opp. Br. at 22 (ECF No. 25).  The Choctaw Nation Online Pharmacy Refill Center has the same NCPDP number as the Choctaw Nation Health Clinic–Rubin White, Poteau pharmacy, for which Petitioners submitted a signed Provider Agreement, which shows that they are the same entity.  Harris Decl. ¶ 20 (ECF No. 5-1).   And, in October 2009, all Respondent pharmacies—including the Durant Pharmacy—entered into a new, single Provider Agreement with Caremark, LLC, i.e., the "chain agreement," replacing the earlier signed Provider Agreements. *See id.* ¶ 26 & Ex. H (ECF Nos. 5-1, 9).

---

[5] *Available at* https://adr.org/sites/default/files/Commercial%20Rules.pdf.   Petitioners have reviewed all versions of the AAA Commercial Rules going back to January 1, 2003, as archived on the AAA's website. *See* AAA, Rules, Forms Fees, https://adr.org/ArchiveRules.  Each version of these rules contains identical language.

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

61725558

Respondents assert that only Caremark, LLC is a signatory to the Provider Agreement (Opp. Br. at 22 (ECF No. 25)), but Respondents do not dispute that the other Petitioners fall under the language in the Arbitration Provision applying it to "Caremark's current, future or former employees, parents, subsidiaries, agents and assigns."  Harris Decl., Ex. Q at § 15.09 (ECF No. 9).  As explained in Petitioners' opening Memorandum, even if this language did not cover the other Petitioners, they still would be able to enforce the Arbitration Provision and delegation clause under applicable Arizona law.  *See* Opening Memo. at 25-29 (ECF No. 21); *see also Lackie Drug Store Inc. v. Arkansas CVS Pharm., LLC*, 2021 WL 5567360, at *3 (E.D. Ark. Nov. 29, 2021) (citing *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 255 (5th Cir. 2014)).

Respondents repeatedly emphasize that the delegation clause was not added until the 2014 Provider Manual and thus did not exist when Respondent pharmacies signed the Provider Agreements.  Opp. Br. at 22 (ECF No. 25).  But each of the Provider Manuals going back to 2004 does contain a delegation clause through the incorporation of the AAA Commercial Rules.  *See infra* § VIII.A.  Further, each of the Provider Manuals going back to 2004 contains a provision stating that from time to time, Caremark may amend the Provider Manual by giving notice to the pharmacy of the terms of the amendment and specifying the date the amendment becomes effective.  Harris Decl., ¶ 39 (ECF No. 5-1).  Each of the Provider Manuals going back to 2004 further provides that if the pharmacy submits claims to Caremark after the effective date of any notice or amendment, the terms of the notice or amendment will be deemed accepted by the pharmacy and will be considered part of the Caremark Provider Agreement.  *Id.* Respondent pharmacies received amended Provider Manuals and submitted claims thereafter.  Specifically, Caremark sent all Respondent pharmacies that had entered into Provider Agreements updated editions of Provider Manuals in 2004, 2007, 2009, 2011, 2014, 2016, 2018, and 2020.  *Id.* ¶¶ 27-38.  Respondents do not dispute receiving Provider Manuals from 2014 onwards or continuing to operate pursuant to the Provider Manual's

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

10

terms after receipt, submitting over $90.5 million in claims since 2014.[6]  Harris Decl., ¶ 42 (ECF No. 5-1).

## VII.   The Arbitration Provision is Not Unconscionable.

Respondents' contention that the amendment provision is unconscionable (*see* Opp. Br. at 20-21 (ECF No. 25) has nothing to do with the enforceability of the arbitration provision: "[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Ctr.*, 561 U.S. at 70.  "In other words, a provision permitting the unilateral amendment of any term of contract does not, without more, render a separate provision, such as an arbitration provision, unenforceable on procedural grounds." *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 417 (E.D.N.Y. 2014) (analyzing Caremark Provider Agreement).   Regardless, under the delegation clause, the question of unconscionability of the amendment process is for the arbitrator.  *Rent-A-Ctr.*, 561 U.S. at 69-70.

In any event, numerous courts interpreting the Provider Agreement have analyzed similar attacks on the Provider Agreement and Provider Manual and have concluded that the provision permitting amendment is not unconscionable.  *See Paduano*, 55 F. Supp. 3d at 418; *Uptown Drug Co. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1181-82 (N.D. Cal. 2013) (rejecting unconscionability argument: "Uptown has submitted no evidence to show that it could not have negotiated to alter the terms of the proposed amendments, or that it could not have terminated its business relationship with Caremark and established a relationship with an alternative partner"); *W. Va. CVS Pharm. LLC v. McDowell Pharm., Inc.*, 238 W. Va. 465, 475 (2017) (holding amendment provision "enforceable under Arizona law"); *see also Hopkinton Drug, Inc. v. CaremarkPCS, L.L.C.*, 77 F. Supp. 3d 237, 244 (D. Mass. 2015) (holding that under Arizona law, "the

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

---

[6] The statute of limitations period applicable to Respondents' claims is six years. (Compl., ¶ 58, ECF No. 1 at Ex. 1).  Thus, none of Respondents' claims pre-dates 2015.

11

61725558

course of performance and subsequent conduct of the parties is particularly useful" to showing that parties are operating under an agreement despite amendments). Respondents' reliance on *Robert D. Mabe, Inc. v. Optum Rx*, 2021 WL 2184764, at *1 (M.D. Pa. May 28, 2021), and *Platt v. OptumRx*, Case No. RG20074100 (Cal. Super. Ct., June 22, 2021), is misplaced as those cases involved contracts entered into between OptumRx and third-party pharmacy administrative organizations, not the pharmacies themselves—a fact that was dispositive to resolution of the defendants' defense to arbitration.

Finally, contrary to Respondents' position, Respondent pharmacies were not and are not required to enter into the Provider Agreement to receive reimbursement of their pharmacy claims.  Opp. Br. at 31 n.26 (ECF No. 25).  Caremark does not require any government pharmacy, including any tribal pharmacy, to enter into a Provider Agreement in order to process and pay claims submitted by such a pharmacy.  *See Chickasaw Nation Litig.*, Supplemental Decl. of Stephanie Harris, ¶ 15 (ECF No. 26-1), a copy of which is attached hereto as Exhibit 1.

## VIII.  The Court Should Reject Respondents' Remaining Challenges.

None of Respondents' other challenges to the enforceability of the Arbitration Provision has merit and, in any event, should be decided by the arbitrator under the delegation clause.

### A.  Respondents Agreed to a Delegation Clause When They Signed The Provider Agreement.

Respondents repeatedly agreed to unambiguous delegation clauses from the outset of their relationship with Caremark.  When they first signed the Provider Agreement, Respondents agreed to be bound by, and expressly acknowledged receipt of, the then-applicable version of the Provider Manual.  Respondents do not contend that they failed to receive any later amended Provider Manual.  Each of the Provider Manuals dating back to 2004 included a delegation clause stating that "[a]ny and all controversies in connection with or arising out of the Provider Agreement," or "[a]ny and all disputes

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

12

between Provider and Caremark," "will be exclusively settled by arbitration before a single arbitrator in accordance with the Rules of the American Arbitration Association." Harris Decl. ¶¶ 28-37 & Exs. I-J, L-Q (ECF Nos. 5-1, 9). Those delegation clauses are undoubtedly valid. As the Ninth Circuit has held, because the AAA rules provide that the arbitrator shall have the authority to decide threshold arbitrability disputes, "incorporation of [those] rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). That the more recent versions of the Provider Manual contained an additional, more explicit delegation clause does not negate the existence of the delegation clause included in the prior versions by virtue of the incorporation of the AAA rules.[7]

## B. The Delegation Clause Applies to This Dispute.

This dispute arises "in connection with" the Provider Agreement because the Nation's Recovery Act claim is, at bottom, a claim that the reimbursement Respondents received pursuant to the Provider Agreement is somehow insufficient under the Recovery Act. As Petitioners explained in their opening Memorandum (ECF No. 21 at 20-21), the allegations and claims in the Nation's Complaint can only be understood and considered by dissecting Respondent pharmacies' submission of claims and receipt of payments from Caremark—which are necessarily governed by the Provider Agreement and incorporated Provider Manual. *See also* Harris Decl., ¶¶ 15, 17 (ECF No. 5-1).

---

[7] Respondents assert that under Arizona law, there must be a "'manifested assent or intent to be bound'" in order to establish that a contract was formed. Opp. Br. at 26 n.22 (ECF No. 25) (quoting *Schade v. Diethrich*, 760 P.2d 1050, 1058 (Ariz. 1988)). But that is exactly what happened here: Respondents entered into Provider Agreements, which included clear language incorporating the Provider Manual (including the Arbitration Provision and delegation clause), and which Respondents acknowledged receiving. Respondents received amended Provider Manuals over the years and continued to submit claims to, and receive reimbursement from, Caremark. These acts clearly demonstrate a manifested assent and intent to be bound to the Provider Agreement and incorporated Provider Manual, and Respondents offer no explanation otherwise.

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

13

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

Respondents' argument that the Nation's claims fall outside the scope of the Arbitration Provision because the language "relating in any way to[] the Provider Agreement" did not appear until the 2014 Provider Manual is meritless.  Opp. Br. at 28 (ECF No. 25).  Every Provider Manual since 2004—the earliest version applicable to any Respondent pharmacy—has expressly included the Arbitration Provision.  Harris Decl. ¶¶ 28-37 & Exs. I (at 48), J (at 39), L (at 43), M (at 50), N (at 45), O (at 44), P (at 51) and Q (§ 15.09) (ECF Nos. 5-1, 9).  All Provider Manuals require arbitration either of "[a]ny and all controversies in connection with or arising out of the Provider Agreement," or "[a]ny and all disputes between Provider and Caremark," in Scottsdale, Arizona, under American Arbitration Association rules.  *Id.*  It is irrelevant whether the Arbitration Provision mandates arbitrating disputes "in connection with or arising out of" the Provider Agreement, or uses broader language, because the claims fall within the scope of the Arbitration Provision either way.  *See* Opening Memo. at 20-21 (ECF No. 21).

## C.    The Provider Agreement Incorporates The Provider Manual.

Respondents' challenge to the enforceability of the delegation clause and Arbitration Provision based on incorporation by reference is likewise meritless.  At least eleven courts interpreting the Provider Manual have concluded, including as recently as last week, that the Arbitration Provision in the Provider Manual is incorporated by reference into the Provider Agreement and binds the parties to that contract.  *See, e.g.*, *Lackie*, 2021 WL 5567360, at *3; *Bowie's Priority Care Pharm., L.L.C. v. CaremarkPCS, L.L.C.*, 2018 WL 1964596, at *5 (N.D. Ala. Apr. 26, 2018) (rejecting argument that Provider Manual must be signed to be enforceable, particularly where, among other things, "[t]here is no dispute that Plaintiff received copies of the Provider Manual, [and] that Plaintiff submitted claims for payment under the Provider Manual"); *W. Va. CVS Pharm.*, 238 W. Va. at 474 (similar); *see also* Opening Memo. at 15 (collecting additional cases) (ECF No. 21).

14

61725558

Respondents have pointed to no contrary authority. The sole case cited by Respondents, *Allison Steel Manufacturing Co. v. Superior Court*, 523 P.2d 803, 806 (Ariz. Ct. App. 1974), cited in Opp. Br. at 20 (ECF No. 25), does not apply. *Allison Steel* involved a dispute as to whether a subcontract agreement incorporated an indemnification provision included in the primary contract; the *Allison Steel* court recognized that indemnification agreements, unlike ordinary commercial contracts, involve special, heightened rules. *Id.* at 806-07 (noting that "the subcontract agreement failed to meet the stringent standard required in this jurisdiction: the intention to compensate the indemnitee for this own negligence must be expressed in 'clear and unequivocal terms'"). The language that Respondents rely on from *Allison Steel* is limited to indemnification agreements, and nothing in that decision supports Respondents' contention that it extends beyond that narrow scope.

**D.     All Petitioners Can Enforce The Arbitration Provision.**

Respondents fail to provide any reason why all Petitioners cannot enforce the delegation clause and Arbitration Provision. Respondents' sole, single-sentence argument is that equitable estoppel cannot be invoked against a "sovereign," citing *Office of Personnel Management v. Richmond*, 496 U.S. 414, 419 (1990). But that case involved only the federal government, in its capacity as an employer, and not sovereign tribes that entered into commercial contracts; nor did it involve arbitration but rather whether the government could be bound by mistaken representations of an agent. *Id.*; *see also id.* at 415-16 (announcing question before the Supreme Court as: "whether erroneous oral and written advice given by a Government employee to a benefit claimant may give rise to estoppel against the Government, and so entitle the claimant to a monetary payment not otherwise permitted by law"). Nothing in *Richmond* undermines that: (i) who may enforce an arbitration agreement is governed by state contract law; and (ii) Arizona law permits non-signatories to enforce arbitration agreements not only on equitable estoppel grounds but where the relationship between the signatories and nonsignatories is

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

15

sufficiently close.  *See* Opening Memo. at 25-29 (ECF No. 21).

**E.     Respondents' Signature And Initialization Arguments Are Meritless.**

Though Respondents repeatedly emphasize that none of Respondent pharmacies ever signed a contract containing an arbitration clause (Opp. Br. at 1, 3, 11 (ECF No. 25)), there is no requirement that an arbitration provision specifically must be signed separately from the agreement it falls within.  Nowhere in the Opposition do Respondents deny that they entered into the Provider Agreement, and they specifically acknowledge that the Provider Agreement incorporates the Provider Manual that contains the Arbitration Provision.  *Id.* at 19.

Likewise, Respondents' reliance on language in the Provider Agreement stating that "any changes to this agreement must be initialed" (*id.* at 20), is a red herring.  Each Provider Agreement expressly incorporates the Provider Manual, as the Nation acknowledges.   And as explained *supra* in Section VI, each Provider Manual was properly amended.

**F.     The Arbitration Provision is Valid Regardless of Who Drafted it.**

The fact that Respondents did not draft the Arbitration Provision (Opp. Br. at 15-16 (ECF No. 25)) is irrelevant.  Respondents cite no case that holds that an arbitration provision must have been drafted by a tribe to establish a waiver.  In *C & L Enterprises*, the arbitration provision was a form agreement from the American Institute of Architects. 532 U.S. at 415.  The holding of *C & L Enterprises* is not limited to contracts proposed or drafted by a tribe.  *Star Tickets v. Chumash Casino Resort*, 2015 WL 6438110, at *4 (Mich. Ct. App. Oct. 22, 2015) ("Although the Supreme Court mentioned that the tribe had proposed, prepared, and tendered the contract, we find no language in the opinion indicating or suggesting that this fact had any ultimate bearing on the Court's holding that the relevant contractual provision constituted a clear waiver of sovereign immunity.").  The court in *Star Tickets* succinctly explained the import of this fact in the *C & L Enterprises* decision: "The Supreme Court, in alluding to the tribe's tendering of

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

16

the contract, was merely commenting on principles related to ambiguous adhesion contracts before concluding that the contract was not ambiguous on the issue of waiver, nor foisted upon the tribe." *Id.* The *Star Tickets* court rejected an argument similar to the one advanced by Respondents, because there, as here, the court was "addressing a clear and unambiguous waiver of sovereign immunity, and there is no indication of unequal bargaining power or that [the tribe] was forced into the agreement." *Id.* Moreover, although Respondents argue that unambiguous language in the Arbitration Provision should be construed in their favor, they identify no ambiguity. *See* Opp. Br. at 16 & n.16 (ECF No. 25).

## G. Respondents Received All Provider Manuals.

Respondents' assertion that Petitioners have not shown that Respondents ever received or reviewed all of the Provider Manuals (Opp. Br. at 23 (ECF No. 25), is demonstrably inaccurate. Each Provider Agreement signed by Respondent pharmacies states, "By signing below, Provider agrees to the terms set forth above and acknowledges receipt of the Provider Manual." Harris Decl., Exs. A-H (ECF No. 9). Petitioners also submitted a document showing proofs of delivery of the Provider Manual and Provider Manual Supplements from 2016 to 2020 to Respondent pharmacies. Respondents are critical of this document as created by "unnamed personnel" (Opp. Br. at 23), but "[a] custodian or other qualified witness need not have personal knowledge regarding the creation of the document offered, or personally participate in its creation, or even know who actually recorded the information." *See Lackie*, 2021 WL 5567360, at * 3 (quotation marks omitted). Respondents also point to the phrase "sig unavailable" in the document; this simply "means that the Provider Manual was delivered to each location, but no one from the Choctaw Nation signed for the delivery." Harris Decl. ¶ 38. Tellingly, nowhere in the Opposition do Respondents assert that they failed to receive any version of the Provider Manual.

17

61725558

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

**IX.    Under *Brice*, The Arbitrability of The Nation's Recovery Act Claims Must be Decided by The Arbitrator Pursuant to The Delegation Clause.**

Because there is a valid delegation clause, Respondents' arguments that the Recovery Act displaces any agreement to arbitrate (Opp. Br. at 29-30 (ECF No. 25)) must be decided by the arbitrator in the first instance.[8]   The Ninth Circuit recently held that where there is a valid delegation clause, "effective vindication challenges"—which are indistinguishable from Respondents' challenge to whether arbitration would "prevent" or "hinder" the Nation's ability to assert its Recovery Act claim—must be decided by the arbitrator in the first instance.  *Brice*, 13 F.4th at 837-38.

In *Brice*, the Ninth Circuit addressed the interplay between a delegation clause and the defense of prospective waiver, i.e., effective vindication, of a federal right.  *Id.* at 826-27.  *Brice* upheld the delegation clause because "it [did] not prevent the [plaintiffs] from arguing to an arbitrator that the arbitration agreement is unenforceable."  *Id.*  *Brice* explained that just because an arbitration agreement *might* prevent a party from pursuing a federal claim in arbitration does not mean that delegating that issue to the arbitrator to decide would impair that federal claim.  *Id.* at 829-30.   Because arbitrators may "consider[] enforceability disputes based on federal law," parties' "rights to pursue their federal prospective-waiver argument remains intact at this stage of the proceedings and the delegation provision is not facially a prospective waiver."  *Id.* at 830.

Respondents attempt to distinguish *Brice* on two grounds (Opp. Br. at 38 (ECF No. 25)), each of which is unavailing.  Contrary to Respondents' contention that the "prevent and hinder" language of Recovery Act distinguishes their challenge here from

---

[8] Respondents' reliance on *New Prime Inc. v. Oliveira* is misplaced.  *See* Opp. Br. at 10, 26 (ECF No. 25) (citing *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019)).  Contrary to Respondents' argument, *New Prime* reaffirmed that a valid delegation clause must be enforced, requiring all disputes over arbitrability to be decided by the arbitrator in the first instance.  139 S. Ct. at 538 ("[a] delegation clause is merely a specialized type of arbitration agreement, and the [FAA] 'operates on this additional arbitration agreement just as it does on any other'" (quoting *Rent-A-Ctr.*, 561 U.S. at 70)).

18

61725558

an effective vindication challenge, nothing in *Brice* suggests that Respondents' "prevent or hinder" argument should be treated any differently than an effective vindication challenge under a delegation clause. Both challenges go to the enforceability of the Arbitration Provision, and like in *Brice*, there is nothing in the agreement that prevents an arbitrator from considering such a challenge and relying on all applicable law in doing so. *Brice*, 13 F.4th at 830 ("But because the arbitrator also is instructed to apply 'the terms of this Agreement' in deciding enforceability issues, and the parties' arbitration agreement contemplates disputes arising under 'federal, state, or Tribal Law . . . based on any legal or equitable theory,' the arbitrator is not clearly foreclosed from considering [the] prospective-waiver argument.").

The Court should reject Respondents' suggestion that the "prevent or hinder" language in the Recovery Act, under which Respondents contend the Nation's case must be evaluated, is a "more modest" standard than the effective vindication standard. Opp. Br. at 29-30 (ECF No. 25). Respondents cite no relevant authority supporting their position, let alone that the terms "prevent or hinder" in the statute have anything to do with arbitration. Moreover, courts have on occasion analyzed the "effective vindication" principle using the terms "prevent" or "hinder"—indicating that these terms are, at most, synonymous. *See, e.g.*, *Badinelli v. The Tuxedo Club*, 183 F. Supp. 3d 450, 457 (S.D.N.Y. 2016) ("The Court therefore rejects plaintiff's argument that the cost of arbitration would hinder plaintiff from vindicating his rights.").[9]

The holding of *Brice* is broad and applies to all effective vindication challenges to all federal statutes, including the Recovery Act. There is nothing in the decision limiting it to the specific federal right at issue in that case, and Respondents have identified no

---

[9] The Chickasaw Nation, represented by the same counsel here, in their appeal before the Ninth Circuit, argued that it reached the same result regarding arbitrability under either its purported "prevent or hinder" standard or the effective vindication standard, further demonstrating that the standards are the same. *See Caremark, LLC v. Chickasaw Nation*, No. 21-16209, Appellants Opening Br. at 46-52 (ECF No. 27-1) (9th Cir.).

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

19

case interpreting the Recovery Act differently than other federal statutes in this regard. Under *Brice*, Respondents' challenge to the arbitrability of the Nation's Recovery Act claims must be decided in the first instance by the arbitrator.

## X.   Neither The Statute Nor Any Case Precludes Arbitration of Recovery Act Claims.

Respondents' argument that the Recovery Act "displace[s]" arbitration (Opp. Br. at 29 (ECF No. 25)) is not supported by the statute or caselaw.  Nothing in the statutory text precludes arbitration; indeed, the Recovery Act does not mention arbitration.[10] Where a statute is silent as to arbitrability, the Supreme Court has held that arbitration of the statutory claim is permissible.  *See CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 104 (2012) ("Because the CROA is silent on whether claims under the Act can proceed in an arbitrable forum, the FAA requires the arbitration agreement to be enforced . . . ."); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626 (2018) ("Congress has likewise shown that it knows how to override the Arbitration Act when it wishes—by explaining, for example, that, '[n]otwithstanding any other provision of law, . . . arbitration may be used . . . only if' certain conditions are met or that '[n]o predispute arbitration agreement shall be valid or enforceable' in other circumstances, or that requiring a party to arbitrate is 'unlawful' in other circumstances yet." (alteration in original)).

Likewise, there is no case—identified by Respondents or otherwise—holding that claims brought under the Recovery Act cannot be arbitrated.  Nor do Respondents dispute that the Arbitration Provision encompasses the Nation's claims under the Recovery Act. Respondents have not carried their burden of "show[ing] that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue," *Shearson/Am.*

---

[10] Respondents argue in a single conclusory sentence that because the United States is not subject to arbitration under the Recovery Act, Respondents cannot be also.  Opp. at 29 (ECF No. 25).  Putting aside that Respondents cite no authority to support that the United States is not subject to arbitration, Indian tribal nations are not the same as the United States, and there is nothing in the Recovery Act that states otherwise.

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

20

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

*Express v. McMahon*, 482 U.S. 220, 227 (1987), thus, the presumption of arbitration stands. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."); *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1063 (9th Cir. 2020) (FAA creates a "presumption in favor of arbitration"), *cert. denied*, 141 S. Ct. 2845 (June 28, 2021). Contrary to Respondents' position, the Supreme Court has not carved out a special rule for tribes with respect to the arbitration of federal statutory claims. Opp. Br. at 30 & n.25 (ECF No. 25). Rather, the Supreme Court has made clear that federal statutory claims can be arbitrated unless the statute expressly prohibits arbitration. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *see also* Opening Memo. at 22-23 (ECF No. 21) (collecting cases). Nothing in the cases cited by Respondents supplants that well-settled rule.

Finally, although Respondents emphasize the terms "prevent" and "hinder" in the Recovery Act to argue that the statute precludes arbitration, Respondents have not identified a single case involving the Recovery Act or any other statute containing those terms that support their argument. To the contrary, *CompuCredit* and *Epic Systems* make clear that when Congress wishes to preclude arbitration, it explicitly says so by using the word "arbitration." The Recovery Act contains no such explicit prohibition. Nor have Respondents pointed to anything in the legislative history that would demonstrate that Congress intended to preclude arbitration of Recovery Act claims or, more importantly, void arbitration provisions to which tribes had previously agreed. None of the scant legislative history Respondents cite concerns arbitration, and thus is insufficient to establish a Congressional command to categorically preclude arbitration of these statutory claims. In order to avoid the plain language of their agreement, Respondents are asking the Court to write into the Recovery Act a prohibition on arbitration— something Congress did not do, and something the Supreme Court has never done to any federal statute despite being asked to do so many times. *Epic Sys.*, 138 S. Ct. at 1627

61725558

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

("In many cases over many years, this Court has heard and rejected efforts to conjure conflicts between the Arbitration Act and other federal statutes.  In fact, *this Court has rejected every such effort to date . . . .*" (emphasis added)).

## XI.     Arbitration Does Not Prevent Effective Vindication of The Nation's Recovery Act Claims.

In the event the Court chooses to address this issue, Respondents have failed to carry their burden that the Nation's statutory claims should not be arbitrated.  *McMahon*, 482 U.S. at 227.  Respondents do not argue that the requirements of the Arbitration Provision, including the costs, escrow and fee provisions, are prohibitive or will prevent them from arbitrating.  Respondents do not say that they cannot afford to arbitrate, or will otherwise be prevented from doing so, if the Court grants the Petition.  The Nation is a sophisticated entity that "as a sovereign Tribal government, has invested significant resources in the development and expansion of its Tribal health care system infrastructure" (Opp. Br. at Ex. 1 (Declaration of Brian Danker) at ¶ 12 (ECF No. 25)), and is being represented by two firms in this case and two firms in the litigation in Oklahoma.  And Respondents did not submit evidence on their inability to pay for arbitration, which itself is fatal to their argument.  *See, e.g.*, *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 252 (Ariz. Ct. App. 2005) (rejecting argument that arbitration clause was substantively unconscionable because the opposing party failed to present "individualized evidence to establish that the costs of arbitration [were] prohibitive").

Instead, without evidence, Respondents argue that "many" other unspecified tribes and tribal organizations may be deterred from bringing suit.  Opp. Br. at 32 (ECF No. 25).  Such an argument is insufficient to defeat arbitration.  *See, e.g.*, *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000) (holding that the mere "risk that [a litigant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement").  The Fifth Circuit explicitly rejected this argument in a challenge to arbitration under a substantively similar provider agreement.  *Crawford Pro. Drugs*, 748 F.3d at 267 (rejecting plaintiffs' attempt to avoid arbitration based on fees and cost

22

61725558

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

shifting terms in substantively identical agreement because "plaintiffs failed to present any *specific, individualized evidence* that they were likely to face prohibitive costs if forced to arbitrate their underlying claims" (emphasis added)); *accord Burton's Pharm., Inc. v. CVS Caremark Corp.*, 2015 WL 5430354, at *7 (M.D.N.C. Sept. 15, 2015); *see also Clark v. Renaissance W., LLC*, 307 P.3d 77, 80 (Ariz. Ct. App. 2013) ("The party seeking to invalidate an arbitration agreement on [the] grounds [of fees or costs] has the burden of proving that arbitration would be prohibitively expensive.").

Respondents' reliance on *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1178 (9th Cir. 2003), cited in Opp. Br. at 32-33 (ECF No. 25), is misplaced. *Ingle* involved an employment dispute, not a commercial dispute, and an arbitration agreement that required the employee to bear arbitration costs even if she were successful. *Id.* The court found the cost-splitting provision unconscionable because it "blatantly offends basic principles of fairness." *Id.* Even assuming *Ingle*'s holding applies outside of the employment context, the case is inapposite because the Arbitration Provision does not require a successful party to share costs. *See* Harris Decl., Ex. Q, § 15.09 at 91 (ECF No. 9).

Respondents likewise fail to demonstrate, as is their burden, how the other provisions in the Arbitration Provision will hinder them specifically from pursuing the Nation's Recovery Act claims. Respondents do not explain how the dispute notice requirement displaces the statute of limitations in the Recovery Act. *See* Opp. Br. at 34 (ECF No. 25). That is because there is no conflict between the two. The notice requirement applies to the process envisioned by the Provider Agreement; it does not purport to create a separate statute of limitations for claims. And, regardless, this is a question for the arbitrator.

Nor do Respondents specify how the discovery provisions set forth in the Arbitration Provision will prevent them from obtaining necessary discovery; they do not even identify what discovery they will be prevented from seeking. *See id.* at 34-35. The

23

61725558

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

Supreme Court in *Gilmer v. Interstate/Johnson Lane Corp.* rejected an almost identical challenge to an arbitration agreement because the challenging party, an employee, failed to specify what discovery was needed from the employer to effectively litigate his claims. 500 U.S. 20, 31 (1991).  In doing so, the Supreme Court emphasized that arbitration agreements "trade[] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."  *Id.* (quotation marks and citation omitted).  This is precisely what Respondents agreed to here.  Moreover, Respondents' cases are readily distinguishable because they involve individual employee-plaintiffs; they are cases in which the plaintiff's claims could only be supported by information in the possession of the employer.  This is not an employment case, and Respondents have access to the information allegedly supporting their claims.  Respondents' attempts to distinguish *Gilmer* fail for these same reasons.[11]

Nor have Respondents carried their burden of demonstrating that the Arbitration Provision impermissibly limits their recovery.  Contrary to Respondents' argument, there is no conflict between the Recovery Act and the Arbitration Provision, because the latter expressly permits the arbitrator to award damages "as required by law."  *See* Harris Decl. Ex. Q, § 15.09 at 91 (ECF No. 9).  Thus, should Respondents prevail in arbitration, nothing prevents them from seeking all damages they are entitled to under the Recovery Act.  And several district courts analyzing this same provision in other Provider Agreements have concluded that it is not unconscionable.  *See, e.g.*, *Paduano*, 55 F. Supp. 3d at 419; *Hopkinton Drug*, 77 F. Supp. 3d at 247; *see also Burton's*, 2015 WL 5430354, at *7 (rejecting challenge to arbitration provision because party failed to show that provision limited statutory damages).

---

[11] The cases cited in footnote 32 of the Opposition are readily distinguishable as these cases deal with challenges to arbitration based on unconscionability, not effective vindication.  As discussed *supra*, the Arbitration Provision is not unconscionable.  In any event, the discovery restrictions in those cases—almost all of which are employment cases—were more restrictive than those here, which permit the arbitrator to allow the parties to pursue broad discovery upon a showing of need.

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respondents further argue the limitation on damages is impermissible because the Nation is seeking punitive damages. Opp. Br. at 36-37 (ECF No. 25). The Recovery Act does not permit punitive damages. To the extent Respondents rely on the Nation's state law negligence claim as the basis for punitive damages, that reliance is misplaced in an effective vindication challenge. The effective vindication doctrine only applies to federal statutory rights. *See Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 346 (6th Cir. 2006).

Respondents also do not explain how preserving confidentiality will prevent the Nation from pursuing its Recovery Act claims. Respondents assert that the Nation will be prevented "from learning the results of other proceedings involving similar claims and contracts" (Opp. Br. at 37(ECF No. 25)), but do not explain how this will hinder their rights or how litigating this matter in court would give them any greater access to information regarding other confidential arbitrations. Regardless, in rejecting a similar challenge to a Caremark provider agreement, a court explained that "Arizona cases have routinely found that confidentiality provisions contained in arbitration clauses are not unconscionable." *Grasso Enters.*, 143 F. Supp. 3d at 540 (collecting cases). The decision in *Longnecker v. American Express Co.*, 23 F. Supp. 3d 1099, 1110 (D. Ariz. 2014), cited in footnote 34 of the Opposition, is distinguishable not only because it was based on California law but also, like most of the cases cited by Respondents, it involved a dispute between an employee and employer with unequal power. *See Grasso Enters.*, 143 F. Supp. 3d at 540 (distinguishing *Longnecker* while upholding confidentiality provision in provider agreement).

Finally, no other case cited by Respondents in footnotes has relevance. *See* Opp. Br. at nn.28, 30, 32-24 (ECF No. 25). Virtually all of these cases are employment cases under the FLSA or Title VII, and involve an individual employee claimant, often with scant resources; in contrast, the Nation runs its own healthcare system and has its own Legal Division that reviews contracts. No case that Respondents cite supports applying

25

the limited exception to the arbitrability of statutory claims here.[12]

## **CONCLUSION**

For these reasons, and for the reasons set forth in their opening Memorandum, Petitioners respectfully request that the Court grant the Petition to Compel Arbitration against all Respondents, and issue an Order, pursuant to Section 4 of the FAA, 9 U.S.C. § 4, compelling Respondents to submit the dispute with the Petitioners relating to the claims in the Complaint to the arbitrator to resolve all questions of arbitrability in the first instance.

**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

---

[12] Even if Respondents were to demonstrate that any portion of the Arbitration Provision should not be enforced, that still would not preclude arbitration because any legally objectionable terms can be severed.  The Provider Manual expressly provides that unenforceable terms can be severed while still leaving intact the Arbitration Provision. *See* Harris Decl. Ex. Q, § 15.09, at 91 (ECF No. 9).  And courts applying Arizona law have concluded the same.  *See, e.g.*, *Paduano*, 55 F. Supp. 3d at 421; *see also Edwards v. Vemma Nutrition*, 2018 WL 637382, at *5 (D. Ariz. Jan. 31, 2018).

61725558

1

Dated this 8th day of December, 2021.

2

Respectfully submitted,

3

**GREENBURG TRAURIG, LLP**

4

 s/ Jon T. Neumann

5

Jon T. Neumann

6

2375 E. Camelback Road, Suite 800
Phoenix, Arizona 85016

7

(602) 445-8411
neumannj@gtlaw.com

8

9

THOMPSON HINE LLP
Peter J. Kocoras

10

(*pro hac vice*)

11

20 North Clark Street, Suite 3200
Chicago, Illinois 60602-5093

12

(312) 998-4241
Peter.Kocoras@ThompsonHine.com

13

14

Brian K. Steinwascher

(*pro hac vice*)

15

335 Madison Avenue, 12th Floor

16

New York, New York 10017-4611
(212) 908-3916

17

Brian.Steinwascher@ThompsonHine.com

18

*Attorneys for Petitioners Caremark, LLC,*

19

*Caremark PHC, LLC, CaremarkPCS Health,*
*LLC, Caremark Rx, LLC, Aetna, Inc., and*

20

*Aetna Health, Inc.*

21

22

23

24

25

26

27

28

27

61725558